**Richard SPERLING, Frederick Hemsley, and Joseph Zelauskas, individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**HOFFMANN–LA ROCHE, INC., a New Jersey corporation, Defendant.**

Civ. Action No. 85–2138 (HAA).

United States District Court, D. New Jersey.

April 30, 1996.

Schwartz, Tobia, & Stanziale, Ben H. Becker, Montclair, N.J., Leonard N. Flamm, New York City, for Plaintiffs.

Crummy, Del Deo, Dolan, Griffinger & Vecchione, John A. Ridley, Richard S. Zackin, J. Timothy McDonald, Newark, N.J., for Defendant.

**OPINION**

HAROLD A. ACKERMAN, District Judge.

This is a putative class action brought by former employees of Hoffmann–La Roche, Inc. ("Roche"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Now before the court are two motions by Roche. Roche moves (a) for partial summary judgment dismissing the individual disparate treatment claims of sixty plaintiffs, and (b) for an *in limine* ruling excluding certain evidence. For the reasons detailed below, both of Roche's motions are denied.

*I. Background*

On February 4, 1984, Roche discharged or demoted approximately 1,100 employees pursuant to a reduction in force ("RIF"), known as Operation Turnabout. Based on Roche's conduct during the RIF, Richard Sperling, one of the employees and a named plaintiff in this case, filed an age discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on behalf of himself and all employees similarly situated. Thereafter, on May 7, 1985, Sperling, along with the other named plaintiffs, filed this action on behalf of themselves and all others similarly situated, alleging, among other things, that the defendant discriminated against them in violation of the ADEA. Subsequently, 476 of the over 1,100 employees affected in the RIF opted-in as members of the putative class.

In October of 1990, after the last consent to join the class action was filed, plaintiffs suggested, in a meeting between the parties with the Honorable Stanley R. Chesler, United States Magistrate, that there should be a trifurcated trial in this action. At the first stage of this trial, the jury would decide classwide issues of disparate treatment or disparate impact; the second stage would consist of individual liability determinations; the third stage would consist of hearing on damages, if necessary. *See* Zackin Aff. at ¶¶ 2, 4(a) (attached as exhibit 2 to Appendix of Hoffmann–La Roche Inc. on Appeal from Opinion of Special Master Dated November 28, 1994 Denying Partial Summary Judgment and Related Relief [hereinafter "Roche App."]). In response, Roche's counsel asserted that it would be difficult to fully assess plaintiffs' proposed trial methodology

because, among other reasons, plaintiffs had not yet provided the theories on which they intended to base their disparate treatment and disparate impact claims. *See id.* at ¶ 4(b).

After further discussion, Judge Chesler directed Roche to serve on plaintiffs a set of contention interrogatories, which would ask plaintiffs to identify the theories on which they based their claims of age discrimination. Thereafter, in December of 1990, Roche served the contention interrogatories on the plaintiffs. There were fourteen contention interrogatories. *See* Flamm Aff. Ex. 2 (attached as Exhibit 3 to Roche App.). Interrogatories 1 through 13 each dealt with a different factor and asked whether plaintiffs contended that that factor was considered by Roche in making the decision to terminate any employee 40 years of age or older. For example, Interrogatory 1 asked: "Do plaintiffs contend that *'relative high salary level due to many periodic incremental increases'* was considered by Roche as a factor in the employment decision made with respect to any employee(s) 40 years of age or older." *Id.* (emphasis added). Interrogatory 2 asked: "Do plaintiffs contend that *'relative high salary within a particular salary grade level'* was considered by Roche as a factor in the employment decision made with respect to any employee(s) 40 years of age or older." *Id.* (emphasis added). Interrogatories 3 through 13 asked the same question with respect to 11 other factors. In addition, Interrogatory 14 asked plaintiffs to "[i]dentify each additional factor, other than those previously identified, which plaintiffs contend was improperly considered by Roche as a factor in the employment decision made with respect to any employee(s) 40 years of age or older." *Id.*

For each of the factors specifically asked about in Interrogatories 1 through 13 and for any additional factor listed by plaintiffs in response to Interrogatory 14, Roche requested that the plaintiffs set forth certain information relating to Roche's alleged consideration of these factors. For example, Roche asked that plaintiffs provide a definition for the factor, set forth all facts that support the contention that Roche considered that factor

in terminating members of the class, and identify each person who plaintiffs contend was adversely affected by consideration of the factor.

After several years, plaintiffs' responses to these interrogatories were completed. The plaintiffs consolidated the 13 factors about which Roche specifically asked into 7 factors. Plaintiffs added two other factors in response to Interrogatory 14. *See* Flamm Aff. Ex. 4 (attached as Exhibit 3 to Roche App.). Subsequently, plaintiffs added another factor by supplementing their response to Interrogatory 14 in February of 1994. *See* Zackin Aff. Ex. A (attached as Exhibit 2 to Supplemental Appendix of Hoffmann–La Roche Inc. on Appeal from Opinion of Special Master Dated November 28, 1994 Denying Partial Summary Judgment and Related Relief [hereinafter "Roche Supp.App."] ).

With the exception of the February 1994 supplementation by the plaintiffs, plaintiffs' responses were filed prior to the Supreme Court's decision in *Hazen Paper Company v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In *Hazen Paper,* the Supreme Court clarified the standards for liability under the ADEA. As will be discussed *infra,* after *Hazen Paper,* actions by employers that were previously held to be violative of the ADEA, *see, e.g., White v. Westinghouse Electric Co.,* 862 F.2d 56, 62 (3d Cir.1988) (firing of older worker to prevent vesting of pension benefits violates ADEA); *Metz v. Transit Mix, Inc.,* 828 F.2d 1202 (7th Cir.1987) (firing of older employee to save salary costs resulting from seniority violates ADEA), can no longer provide the basis for an ADEA claim. *Hazen Paper,* 507 U.S. at 609, 113 S.Ct. at 1705 ("We now clarify that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age.").

Based on *Hazen Paper,* Roche brought the motions now before the court. Roche asserts that, pursuant to *Hazen Paper,* eight of the factors relied upon by plaintiffs in the contention interrogatories, and a portion of a ninth factor, are not, as a matter of law, violative of the ADEA. Therefore, Roche has moved for an order dismissing the dispa-

rate treatment claims of the sixty plaintiffs who, in answering the contention interrogatories, only listed one or more of the challenged factors as the reasons for their termination. Roche also moves for an *in limine* ruling prohibiting evidence of these factors from being introduced at the trial of this matter.

Subsequent to the serving of the contention interrogatories on the plaintiffs, I appointed a special master in this case.[1] Therefore, these motions were referred to the Special Master. In an opinion dated November 28, 1994, the he denied both of Roche's motions. *See* Opinion of Special Master, dated November 28, 1994, at 7, 10–11 [hereinafter "Special Master Opinion"].

The Special Master held that due to the existence of a pattern-or-practice claim in this case, it would be inappropriate to dismiss the 60 class member's individual disparate treatment while there were still a pattern-or-practice claim in the case. The Special Master reasoned that, because the burden of persuasion on the issue of whether Roche discriminated against any individual plaintiff would shift to Roche if the plaintiffs prevailed in proving a pattern or practice of discrimination, it would be inappropriate to rule on a summary judgment motion with respect to any of the individual claims until it was determined who would have the burden of persuasion on this issue. *See* Special Master Opinion at 7–10. The Special Master also denied as premature Roche's motion for an *in limine* ruling on the challenged factors. *See* Special Master Opinion at 10–11.

On March 30, 1995, oral argument was heard on Roche's appeal from this decision. However, given the Special Master's conclu-

sion that Roche's motion must be denied due to the existence of a pattern-or-practice claim in this case and also given that the issue of whether as a matter of law there is a pattern-or-practice claim in this case was before the court in the form of Roche's appeal from the Special Master's denial of its summary judgment motion on plaintiffs' pattern-or-practice claim, I refrained from deciding the *Hazen Paper* motion until the pattern-or-practice issues were resolved. In an opinion issued today, April 29, 1996, I granted Roche's motion for summary judgment on plaintiffs' pattern-or-practice claim.

Therefore, now is the proper time to address Roche's motion based on *Hazen Paper*. In addition, given that there is no longer a pattern-or-practice claim in this case due to the granting of Roche's motion for summary judgment on that claim, the Special Master's reasoning is moot. Therefore, I will now turn to the substance of Roche's motions (a) for partial summary judgment dismissing the individual disparate treatment claims of sixty plaintiffs, and (b) for an *in limine* ruling excluding certain evidence.

## II. Discussion

First I will address Roche's motion for judgment on the individual claims of the sixty plaintiffs. Then I will discuss Roche's motion for an *in limine* ruling.

### A. The Individual Claims

Roche argues that the individual disparate treatment claims of sixty plaintiffs must be dismissed because the allegations on which they base their claims of age discrimination, as embodied in their answers to the conten-

---

1. After making a determination that this matter involved complex issues of fact and law, I appointed, pursuant to Federal Rule of Civil Procedure 53, Alan Schwartz, Sterling Professor of Law at the Yale Law School, as special master. The order appointing Professor Schwartz provided, in part, that

2. Professor Schwartz's powers and duties as special master in this case shall be as follows:

. . . . .

B. To consider and resolve expeditiously any and all present and future disputes be-

tween the parties relating to discovery and other nondispositive motions made prior to the time of trial by jury of the legal issues in this action.

C. To fully consider and prepare reports to be submitted to the Court, including an exposition of all relevant facts and conclusions of law, concerning any and all present and future dispositive motions made prior to the time of trial by jury of the legal issues in this action.

*See* Order, filed on November 21, 1991, at 2.

tion interrogatories, do not state claims of age discrimination after *Hazen Paper.*

More specifically, as stated above, plaintiffs' answers to the contention interrogatories identified nine factors which Roche allegedly considered in determining who would be fired in Operation Turnabout. Those factors are:

(1) Relatively high salary and/or relatively high salary grade;

(2) Replaced by younger person;

(3) Ample retirement benefits;

(4) Age-related disability;

(5) Proximity to voluntary retirement;

(6) Perceived as less productive and/or less creative;

(7) Perceived as having limited skills and/or ability to acquire skills;

(8) Perceived as over-qualified or over-experienced; and

(9) Perceived as no longer fitting into the organization.

*See* Flamm Aff. Ex. 4 (attached as Exhibit 3 to Roche App.). In addition, in February 1994, plaintiffs supplemented their response to Interrogatory 14 to include the allegation that Roche improperly considered the following factor when deciding to terminate all plaintiffs: "Hoffmann–La Roche Inc.'s policy and practice of basing Operation Turnabout termination decisions on subjective criteria applied by line managers and supervisors." Zackin Aff. Ex. A (attached as Exhibit 2 to Roche Supp.App.).

Roche is not challenging factor 2—replaced by a younger person. In addition, in defining factor nine, plaintiffs provided three alternative definitions for "perceived as no longer fitting into the organization." Roche is not challenging two of the three definitions. Roche argues that, after *Hazen Paper,* the remaining factors (*i.e.,* factors one, three through eight, a portion of factor nine, and the February 1994 supplemental factor) are not valid bases on which to bring an individual, disparate treatment ADEA claim, and therefore, the plaintiffs who solely allege that they were terminated based on these factors have failed to state a claim of age discrimination. For example, Roche argues that *Hazen Paper* teaches that firing some-

one because he has a high salary does not violate the ADEA. Therefore, according to Roche, if a plaintiff claimed, via the contention interrogatories, that the only "improper" factor that Roche considered in firing him was his high salary (i.e., factor 1), then that plaintiff's claim must be dismissed because, even if that plaintiff proved that Roche fired him because of his high salary, it did not violate the ADEA. In other words, Roche argues that if a plaintiff only alleges that he was fired because he had a high salary, then that plaintiff has failed to state a cause of action for which relief can be granted under the ADEA.

In response to Roche's motion, plaintiffs argue, among other things, that the theories of age discrimination that are set forth in their contention interrogatories survive *Hazen Paper.* In addition, plaintiffs assert that, even if the factors on which the sixty plaintiffs rely are not viable after *Hazen Paper,* they are not precluded by their answers to the contention interrogatories from raising an additional theory of discrimination that is consistent with *Hazen Paper.*

Thus, in deciding this motion two issues must be addressed. First, it must be determined whether any of the factors that plaintiffs listed in their answers to the contention interrogatories no longer amount to a cause of action under the ADEA after *Hazen Paper.* Second, assuming one or more of the factors on which the plaintiffs rely are no longer viable causes of action under the ADEA, it must be determined whether the individual claims of the plaintiffs who only rely on the invalid factors must be dismissed.

■ Before addressing these issues, it should be noted that, although Roche denominated its motion as one for summary judgment, Roche is, in effect, moving to dismiss the claims of these plaintiffs for failure to state a cause of action under the ADEA. In other words, Roche is arguing that these sixty plaintiffs' have failed to state a cause of action in their contention interrogatories. In fact, Roche has admitted as much. *See, e.g.,* Transcript of Oral Argument, dated March 30, 1995, at 13 (statement by Roche's counsel that "essentially, this is the equivalence of a

motion to dismiss that we had to bring"). Thus, when addressing Roche's arguments I will use the standard applicable to a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Therefore, when reviewing the plaintiffs' contentions, I will accept the contentions as true, "view[ ] them liberally giving plaintiffs the benefit of all inferences which may be drawn therefrom," and determine whether "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273 (3d Cir.1985) (quoting *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444, (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978)) (cited in *Dykes v. Southeastern Pennsylvania Transportation Authority*, 68 F.3d 1564, 1566 n. 1 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1434, 134 L.Ed.2d 556 (1996)).

### 1. Plaintiffs' Contentions and *Hazen Paper*

Before addressing whether plaintiffs' contentions are viable, I will discuss the Supreme Court's *Hazen Paper* decision.

*Hazen Paper:* The ADEA provides, in part, that "[i]t shall be unlawful for an employer ... to discharge any individual ... because of his age." 29 U.S.C. § 623(a)(1). Pursuant to this section of the ADEA, Walter Biggins brought an age discrimination claim against his employer, Hazen Paper Company. Biggins, who was hired at the age of 52, was fired at the age of 62, which was only a few weeks before his pension rights would have vested on the basis of his ten years of service to the company. *Biggins v. Hazen Paper Co.*, 953 F.2d 1405, 1411 (1st Cir.1992), *aff'd in part and vacated in part*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Hazen Paper contended that it terminated Biggins because he had started a competing business. When the company required Biggins to sign a confidentiality agreement which would restrict his outside business activities, Biggins refused and was terminated. *Id.* The jury found that Hazen Paper had violated the ADEA, and this finding was affirmed by the United

States Court of Appeals for the First Circuit. *Id.* at 1412.

The Supreme Court summarized the First Circuit's reasoning as follows:

> In affirming the judgments of liability, the Court of Appeals relied heavily on the evidence that [Hazen Paper] had fired [Biggins] in order to prevent his pension benefits from vesting. That evidence, as construed most favorably to [Biggins] by the court, showed that the Hazen Paper pension plan had a 10–year vesting period and that [Biggins] would have reached the 10 year mark had he worked "a few more weeks" after being fired.... There was also testimony that [Hazen Paper] had offered to retain [Biggins] as consultant to Hazen Paper, in which capacity, he would not have been entitled to receive pension benefits.... The Court of Appeals found this evidence of pension interference to be sufficient for ERISA liability ... and also gave it considerable emphasis in upholding ADEA liability. After summarizing all the testimony tending to show age discrimination, the court stated:
>
> > "Based on the foregoing evidence, the jury could reasonably have found that Thomas Hazen decided to fire [Biggins] before his pension rights vested and used the confidentiality agreement [that Hazen Paper asked Biggins to sign] as a means to that end. The jury could also have reasonably found that age was inextricably intertwined with the decision to fire Biggins. If it were not for Biggins' age, sixty-two, his pension rights would not have been within a hairsbreadth of vesting. Biggins was fifty-two years old when he was hired; his pension rights vested in ten years."

*Hazen Paper*, 507 U.S. at 607, 113 S.Ct. at 1704–05.

The Supreme Court rejected the First Circuit's reasoning and "clarif[ied] that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Id.* at 609, 113 S.Ct. at 1705. In other words, under the ADEA, "a disparate treatment claim cannot succeed unless the employee's [age] actually played a role in

[the employer's decisionmaking] process and had a determinative influence on the outcome." *Id.* at 610, 113 S.Ct. at 1706. *See also Miller v. CIGNA Corporation,* 47 F.3d 586, 595 (3d Cir.1995) (holding that plaintiff in an ADEA case "has the burden of persuading the trier of fact by a preponderance of the evidence that there is a 'but-for' causal connection between the plaintiff's age and the employer's adverse action").

Disparate treatment, thus defined, captures the essence of what Congress sought to prohibit in the ADEA. It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age.... Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes.

*Hazen Paper,* 507 U.S. at 610, 113 S.Ct. at 1706 (citations omitted).

■ In rejecting the First Circuit's reasoning, the Supreme Court emphasized that when an employer's decision is entirely motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes is not present. *See id.* This is the case even where the motivating factor is correlated with age. For example, pension status is typically correlated with age. However, if an employer, like Hazen Paper, fires an employee solely because the employee's pension is about to vest, the employer does not violate the ADEA, even if older employees are more likely to be close to having their pensions vest than younger employees. *See id.* at 609–13, 113 S.Ct. at 1706–07. This is because

[t]he prohibited stereotype ("Older employees are likely to be ___") would not have figured in this decision, and the attendant stigma would not be the result of an inaccurate and denigrating generalization about age, but would rather represent

an accurate judgment about the employee—that he indeed is "close to vesting." *Id.* at 612, 113 S.Ct. at 1707. In other words, "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age-based.' " *Id.*

■ If, however, an employer targeted for termination employees with a particular pension status based on the assumption that these employees would likely be older (i.e., the employer fired persons with a particular pension status because it supposed that those employees would be older), then the employer would have discriminated based on age. *Id.* This is because the employer was actually motivated by age and merely used pension status as a proxy for age. *Id.*

Based on the Supreme Court's analysis in *Hazen Paper,* it must be determined whether any of the factors challenged by Roche are no longer viable theories of age discrimination.

*Factor 1—High Salary:* A number of the plaintiffs allege that they were terminated because of their relatively high salary or relatively high salary grade. The plaintiffs defined this factor as follows:

A plaintiff will be considered as having had a relative high salary or having been in a relatively high salary grade, for purposes of his or her answers to Roche's contention interrogatories, if such person, as of February 1985, had:

a) a high salary within the Roche's [sic] grading system as indicated by:

i) a Compa ratio [2] of at least 55%; or

ii) a Compa ratio of at least 35%, coupled with the fact that the said person had, at a prior time, held the same position or similar position at Roche at a lower salary grade; or

b) a higher salary vis a vis the relevant and prevailing job market pay for compa-

---

**2.** "Compa ratio" is determined by dividing an employee's salary by the mid-point of the range of salaries in the employee's salary grade. It should also be noted that in the opinion dismissing plaintiffs' pattern-or-practice claim, this term is spelled "comporatio." In that opinion, the

spelling comes from plaintiffs' statistical expert's report. However, given that plaintiffs' interrogatory answers, which are central to this motion, spell the term "Compa ratio", I will spell the term in this manner in this opinion.

rable jobs as indicated by (a) a base annual salary, plus bonus payment for 6 weeks or more, amounting to at least 5 percent higher than (b) the relevant and prevailing job market pay for the same or comparable position; or

c) having received at least 5 separate increases in base salary between the years 1979–1984 at an average rate of 7% per salary increase; or

d) having a salary grade higher than at least 50% of the other employees in the same work unit doing same or similar work.

Zackin Aff. Ex. C at 1–2 (attached as Exhibit 2 to Roche App.). All of these definitions are in effect alternative ways to determine whether a plaintiffs' salary is "high" as compared to some bench mark, i.e., as compared to the range of salaries in the grade or to the market rate of salaries for similar positions.

In *Hazen Paper*, the Supreme Court observed that

> [o]n average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee's age is analytically distinct from his years of service. An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, *see* 29 U.S.C. § 631(a), may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age-based."

*Hazen Paper*, 507 U.S. at 611, 113 S.Ct. at 1707.

Several courts have noted that high salary is similar to years of service in that while, on average, those workers with the highest salaries are older workers, high salary and age are nonetheless analytically distinct, and therefore, termination decisions based on the employee's level of compensation are not violative of the ADEA. *Thomure v. Phillips Furniture Company*, 30 F.3d 1020, 1024 (8th Cir.1994) (stating that the defendant could " 'take account of one [salary] while ignoring the other [age]' ... even though there happened to be a correlation between the two in several cases"), *cert. denied,* —— U.S. ——, 115 S.Ct. 1255, 131 L.Ed.2d 135 (1995); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125–26 (7th Cir.1994) (after noting that the Supreme Court stated in *Hazen Paper* that the ADEA was enacted by Congress because of "its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes" *see Hazen Paper*, 507 U.S. at 610, 113 S.Ct. at 1706, and that the Supreme Court held that "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears ... [and that] [t]his is true even if the motivating factor is correlated with age, as pension status typically is[,]" *id.*, the Court of Appeals held that "[t]his rationale applies with equal force to cases where workers are discharged because of salary considerations"); *Chiano v. Dimension Molding Corporation*, 1993 WL 326687 *2 n. 3 (N.D.Ill. August 25, 1993) (stating that "[a]pplying the rationale of *Hazen*, if an older worker's salary is based on years of service and not age, the employer does not violate the ADEA by replacing the worker only because of her high salary"); *Bornstad v. Sun Company, Inc.*, 1993 WL 257310 *2 (E.D.Pa. June 28, 1993) (citing *Hazen Paper* for the proposition that plaintiff's deposition testimony "equat[ing] alleged seniority cost-saving motivation with age discrimination" is an approach that is "no longer viable"), *aff'd*, 19 F.3d 642 (3d Cir.1994) (TABLE). *See also Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 117 (2d Cir.1991) (stating, in case prior to *Hazen Paper*, that "there is nothing in the ADEA that prohibits an employer from making employment decisions that relate to an employee's salary to contemporaneous market conditions and the responsibilities entailed in particular positions and concluding that a particular employee's salary is too high[,]" even though "high salary and age may be related").

Therefore, Roche is correct in arguing that a claim that by a plaintiff that Roche

fired him because of his high salary, as defined in any of the alternative ways discussed above, does not state a cause of action for which relief can be granted under the ADEA.[3]

As stated above, Roche is not challenging factor 2. Therefore, I will move on to factor 3.

*Factor 3—Ample Retirement Benefits:* Next, some plaintiffs allege that they were terminated because they had "ample retirement benefits." In the opinion dismissing plaintiffs' pattern-or-practice claim, I have already held that firing someone on the basis of their having "ample retirement benefits" is not violative of the ADEA. However, I will recap my analysis in this opinion.

In their interrogatory answers plaintiffs state the following with respect to the definition of this term:

A Plaintiff will be considered to have been terminated because Roche perceived

or presumed that ample retirement benefits providing a "financial cushion" were then available to said plaintiff, for purposes of said plaintiff's answers to Roche's contention interrogatories, if such plaintiff:

a) was 50 years or older or was 49 years of age and was offered a one year leave of absence; and

b) had 10 or more years of credited service; and

c) was entitled to receive aggregate annual retirement and/or insurance benefits amounting to at least 35 percent of said plaintiff's base annual compensation.

Zackin Aff. Ex. C at 5 (attached as Exhibit 2 to Roche App.).

Plaintiffs argue that consideration of this factor violates the ADEA because at Roche an employee's eligibility for retirement benefits is a function of the employee's age. Therefore, according to plaintiffs, if an em-

---

**3.** It should be noted that plaintiffs have also included the following "optional" subfactors under factor 1:

 a) replacement following termination with [sic] 9 months by another younger employee receiving a base salary, plus bonus of at least 6 weeks, amounting to at least 5 percent less that the salary of the person terminated; or

 b) replacement following termination within 9 months by another Roche employee with at least 5 less years of credited service than the individual terminated; or

 c) the plaintiff has been credited by Roche with at least 15 years of credited service.

*See* Zackin Aff. Ex. C at 1–2 (attached as Exhibit 2 to HLR App.). Plaintiffs' answers to the interrogatory only states that these factors are "[o]ptional other factors supporting inclusion of such individual [a plaintiff] within the category [i.e., the category of plaintiffs alleging that Roche terminated them based on their high salary]." *Id.* at 2. There is no information in the record that reflects to which plaintiffs these optional factors apply. Therefore, it must be assumed that they potentially apply to all plaintiffs who allege that Roche considered their high salary, as defined above, in terminating them.

Optional factors "b" and "c" relate solely to years of service, and therefore, pursuant to *Hazen Paper*, are not improper factors to consider under the ADEA.

However, optional factor "a" is a different story. It is in essence a two-part factor. The first part is that the plaintiff must have been replaced by a *younger* employee. The second part is that such younger employee earned at least 5% less than the older employee he or she replaced. Given that the first part includes an

allegation that the plaintiff was replaced by a younger worker and given that I must view the allegations liberally, the plaintiffs to which this optional subfactor apply are arguably not merely claiming that they were fired because they had a high salary, but rather, are claiming that they were fired because Roche wanted to replace them with a younger worker and high salary was merely a pretext for such discrimination. This obviously would state a cause of action under the ADEA.

In any event, because I am denying Roche's motion to dismiss on other grounds, I need not determine the effect of these optional factors on Roche's motion to dismiss. Therefore, I will proceed under the assumption that in factor 1 plaintiffs only intended to assert a claim that firing someone based on high salary violates the ADEA and not that some plaintiffs were fired because Roche wanted to replace them with a younger worker and high salary was merely a pretext for such discrimination.

However, nothing in this opinion should be read to preclude a claim by individual plaintiffs that they were fired because Roche wanted to replace them with a younger worker and high salary was merely a pretext for such discrimination.

Lastly, the existence of the optional factors does not affect my ruling that a claim that Roche fired a plaintiff because of his high salary, as defined above, is not a cause of action under the ADEA. This ruling is merely that if a plaintiffs claims that Roche fired her because of her high salary and for no other reason, then that plaintiff has failed to state a cause of action.

ployee were terminated based on one of these factors, then they were terminated because of their age. *See* Plaintiffs' Brief in Opposition to Hoffmann–La Roche Inc.'s Appeal from the Opinion of the Special Master Dated November 28, 1994 Denying Partial Summary Judgment and Related Relief at 24 [hereinafter "Plaintiffs' Opp. Br."]. Roche argues that consideration of this factor is not violative of the ADEA because it in no way "implicates the stereotype that older workers are not as competent or productive as younger ones, the stereotype that the ADEA was aimed at outlawing." Brief of Hoffmann–La Roche Inc. in Support of Appeal from Opinion of the Special Master Dated November 24, 1994 at 17 [hereinafter "Roche Br."].

As discussed above, in *Hazen Paper*, the Supreme Court held that "an employer does not violate the ADEA just by interfering with an older employee's pension benefits that would have vested by virtue of the employee's years of service." *Hazen Paper*, 507 U.S. at 613, 113 S.Ct. at 1707–08. Part of the reasoning underlying this holding was that

> [i]t is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age. . . . Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes.

*Id.* at 610, 113 S.Ct. at 1706 (citations omitted). In *Hazen Paper*, the employer's motive in firing the plaintiff was to prevent plaintiff's pension benefits from vesting. Thus, the employer's decision was wholly motivated by factors that were "analytically distinct" from age, and therefore, "the problem of inaccurate and stigmatizing stereotypes disappear[ed]." *Id.* at 611, 113 S.Ct. at 1706. Because the prohibited stereotype did not figure into the decision, the employer's decision did not violate the ADEA. *See id.* at 611–15, 113 S.Ct. at 1707–08. This is the case even though the motivating factor— pension status—was correlated with age. Pension status is normally based on years of service. "Because age and years of service

are analytically distinct, and employer can take account of one while ignoring the other, and thus it is incorrect to say a decision based on years of service is necessarily 'age-based.'" *See id.* at 611, 113 S.Ct. at 1707.

■ Roche is correct in arguing that reliance on the existence of "ample retirement benefits" in firing a plaintiff is not violative of the ADEA. This is because reliance on this factor does not involve "the problem of inaccurate and stigmatizing stereotypes" "that productivity and competence decline with old age." *See id.* at 611, 113 S.Ct. at 1706. Plaintiffs' definition states that this factor applies where "Roche perceived or presumed that ample retirement benefits providing a 'financial cushion' were then available to said plaintiff." Zackin Aff. Ex. C at 5 (attached as Exhibit 2 to Roche App.). Thus, under this factor, plaintiffs' are not alleging that they were fired based on a perception that older workers were less competent or less productive. Rather, plaintiffs are alleging that Roche fired employees who would be better able to absorb the effects of unemployment because of they had "ample retirement benefits." Taking such a factor into consideration when deciding who should be fired does not violate the ADEA. *See Gokcen v. Babbitt*, 999 F.2d 542, 1993 WL 283591 (9th Cir. July 27, 1993) (table) (holding that ADEA was not violated where "[r]etirement eligibility was considered only to minimize any adverse effect that closure [of the section where plaintiff worked] might have on the [employer] and its employees" and where "[n]othing in the record suggests the decision [to eliminate plaintiff's position] was partially based on a belief that [plaintiff's] age prevented him from performing he duties competently").

That the definition of "ample retirement benefits" also requires that the plaintiff must be at least 50 years old does not detract from this conclusion. First it should be noted that the Supreme Court specifically stated in *Hazen Paper* that it was not "consider[ing] the special case where an employee is about to vest in pension benefits as a result of his age, rather than years of service, . . ., and the employer fires the employee in order to prevent vesting." *Hazen Paper*, 507 U.S. at

613, 113 S.Ct. at 1707. Plaintiffs in effect argue that this is such a "special case" because part of the definition of ample retirement benefits is that the employee had to be at least 50 years old and that it should be held that the ADEA is violated in such special cases.

This argument fails because the Supreme Court in *Hazen Paper* clearly stated that "[i]t is *the very essence of age discrimination* for an older employee to be fired because the employer believes that productivity and competence decline with old age," and that "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappear"—even where the motivating factor is correlated with age. *Hazen Paper,* 507 U.S. at 611, 113 S.Ct. at 1706 (emphasis added). Therefore, in this case, even though "ample retirement benefits" clearly is correlated with age, consideration of this factor is not violative of the ADEA because plaintiffs are alleging that Roche fired these plaintiffs because Roche perceived that they had a financial cushion and not because Roche perceived that they were less competent or less productive. Therefore, consideration of this factor would not be within the definition of "the very essence of age discrimination" (i.e., firing someone based on the belief "that productivity and competence decline with old age").

Therefore, a claim by a plaintiff that Roche fired her because she had "ample retirement benefits," as defined above, does not state a cause of action for which relief can be granted under the ADEA.

*Factor 4—Age–Related Disability:* Next, some plaintiffs claim that they were terminated because they had an "age-related disability." Plaintiffs defined this factor as follows:

A plaintiff will be considered terminated because Roche considered his or her age-related disability, for purposes of said plaintiff's answer to Roche's interrogatories, if such person:

a) manifested a "material disability"; and

b) said "material disability" was perceived, known, noted or recognized by Roche; and

c) said "material disability" is associated with age.

For the purposes of this contention, a "material disability" is one that meets the requirements of the [New Jersey Law Against Discrimination].

Zackin Aff. Ex. C at 6 (attached as Exhibit 2 to Roche App.). The first two parts of the definition have nothing to do with age. The third part, however, requires that the material disability be "associated" with age. Thus, the question is whether or not a disability that is "associated" with age is analytically distinct from age.

The Court of Appeals for the Eighth Circuit addressed a similar issue in *Beith v. Nitrogen Products, Inc.,* 7 F.3d 701 (8th Cir.1993). In that case, the defendant fired Beith after the results of a physical examination revealed that Beith had degenerative disc disease and osteoarthritis, precluding him from lifting repetitively more than twenty pounds. Thereafter, Beith brought an age discrimination claim against the defendant. In affirming the judgment for the defendant, the Court of Appeals stated that

" 'Congress made plain that the age statute was not meant to prohibit employment decisions based on factors sometimes accompanying advancing age, such as declining health or diminished vigor and competence.' " *Holley v. Sanyo Manufacturing, Inc.,* 771 F.2d 1161, 1167 (8th Cir.1985) (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1016 (1st Cir.1979)); *see also Hazen Paper Co. v. Biggins,* [507] U.S. [604, 611–13], 113 S.Ct. 1701, 1707, 123 L.Ed.2d 338 (1993). Upon our review of the record, we could discern no evidence that the decision to terminate Beith was other than for his back condition. Because back conditions may be more prevalent in older workers does not alone make the decision an age-based decision.

*Id.* at 703.

■ In the case now before the court, the allegation that Roche terminated certain employees due to a disability that was "associated" with age is similarly not violative of the

ADEA. Therefore, a claim that by a plaintiff that Roche fired her because she had an "age-related disability" does not state a cause of action for which relief can be granted under the ADEA.

*Factor 5—Proximity to Retirement:* Next, some plaintiffs allege that they were terminated because of their "proximity to retirement." As in the case of "ample retirement benefits," in the opinion dismissing plaintiffs' pattern-or-practice claim, I have already held that firing someone on the basis of their "proximity to retirement" is not violative of the ADEA. However, I will recap my analysis in this opinion.

In their interrogatory answers plaintiffs state the following with respect to the definition of this term:

> A Plaintiff will be considered to have been terminated because Roche perceived or presumed that said employee was near voluntary retirement, for the purposes of said plaintiff's answers to Roche's contention interrogatories, if:
>
> a) such plaintiff's actual age was at termination, 50 years or above; and
>
> b) the number of years of such plaintiff's remaining employment, as a result subtracting his/her age upon termination from his/her regular (65) or subtracting or stated retirement age, is less than 8 years.

Zackin Aff. Ex. C at 7 (attached as Exhibit 2 to Roche App.). Thus, "proximity retirement" simply means that an employee was over 50 years old and was within 8 years from voluntary retirement.

■ The analysis with respect to "proximity to retirement" is the same as for "ample retirement benefits." This is because, like the "ample retirement benefits" factor, although "proximity to retirement" is highly correlated with age, consideration of it does not violate the ADEA because it does not implicate any inaccurate or stigmatizing stereotypes. The Supreme Court in *Hazen Paper* clearly held that the ADEA is violated when employment decisions are the result of an "inaccurate and denigrating generalization about age," *Hazen Paper,* 507 U.S. at 612, 113 S.Ct. at 1707, and that "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappear"—even where the motivating factor is correlated with age, *id.* at 611, 113 S.Ct. at 1706. Therefore, because "proximity to retirement" does not implicate denigrating stereotypes about older workers, a claim that Roche made an employment decision based solely on an employee's "proximity to retirement" does not state a cause of action under the ADEA.

*Factor 6—Perceived as Less Productive and/or Less Creative:* Next, some plaintiffs allege that they were terminated because they were perceived as "less productive and/or less creative." In their interrogatory answers plaintiffs state the following with respect to the definition of this term:

> A Plaintiff will be considered to have been terminated because Roche perceived or presumed that said plaintiff was less efficient, less energetic, less productive, less able to assume the added responsibilities or less creative, if:
>
> a) statements were made by Roche indicating its belief that such person was less productive or less energetic, etc., or words to that or similar effect, than other employees retained by Roche.
>
> Optional other factors supporting inclusion of an individual within this category include:
>
> a) at least 20 years of service.

Zackin Aff. Ex. C at 8 (attached as Exhibit 2 to Roche App.).

Roche argues that consideration of this factor is not violative of the ADEA because "terminating an employee because he is perceived to be 'less productive or less energetic' (even if the perception is incorrect) is clearly analytically distinct from *assuming* that the employee is 'less productive or less energetic' because of his advancing age." Roche Br. at 23 (emphasis in original). Thus, Roche argues that consideration of this factor does not violate the ADEA because the plaintiffs did not tack on the words "because of age" after the allegation that they were terminated because they were perceived to be less energetic and productive.

■ Roche's argument lacks merit given that Roche's motion is in essence a motion to dismiss. Therefore, I must view plaintiffs allegations liberally and give plaintiffs the benefit of all inferences which may be drawn therefrom. *See Wisniewski,* 759 F.2d at 273. Viewing factor 6 liberally, I conclude that a claim that a plaintiff was terminated because Roche believed that the plaintiff was less productive or less energetic states a cause of action under the ADEA. This is because consideration of stereotypes such as these in making employment decisions is precisely what the ADEA was intended to eradicate. *See Hazen Paper,* 507 U.S. at 609–13, 113 S.Ct. at 1706–07.

*Factor 7—Perceived to have Limited Skills and/or Ability to Acquire Skills:* Next, some plaintiffs allege that they were terminated because they were perceived as having limited skills and/or a limited ability to acquire skills. In their interrogatory answers plaintiffs state the following with respect to the definition of this term:

A Plaintiff will be considered to have been terminated because Roche perceived or presumed that said plaintiff lacked growth potential, could not acquire new skills, or could not transfer existing skills to new areas, as readily as another worker if:

a) statements were made by Roche indicating its belief that such person was less flexible and/or versatile, or words to that or similar effect, than other employees retained; and

b) there existed a specific job or type of job for which plaintiff was not considered.

Optional other factors supporting inclusion of such a plaintiff within this category include:

a) at least 15 years of credited service at Roche in the same or comparable position.

Zackin Aff. Ex. C at 9 (attached as Exhibit 2 to Roche App.).

■ As in the case of factor 6, viewing factor 7 liberally, I conclude that a claim that a plaintiff was terminated because Roche believed that the plaintiff was had limited skills or a limited ability to acquire new skills states a cause of action under the ADEA.

Consideration of factors such as these are also the types of stereotypes the ADEA was intended to eradicate from the employment decisionmaking process. *See Hazen Paper,* 507 U.S. at 609–13, 113 S.Ct. at 1706–07.

*Factor 8—Perceived as Over–Qualified/Over–Experienced:* Next, some plaintiffs allege that they were terminated because of the they were perceived as being over-qualified and/or over-experienced. Plaintiffs define this factor as follows:

A Plaintiff will be considered to have been terminated because Roche perceived or presumed said plaintiff to be over-qualified and/or over-experienced:

a) if such person held a supervisory and/or managerial position; and

b) the plaintiff had acquired over at least 10 years with Roche the requisite skills for the position he/she held; and

c) if other open and available positions, requiring less responsibilities and qualifications, and at a lower salary or salary grade, were not offered or were denied by Roche to said plaintiff.

Zackin Aff. Ex. C at 10 (attached as Exhibit 2 to Roche App.).

■ This factor is arguably correlated with age because it is reasonable to assume that persons holding supervisory or managerial positions are older, and also because the years-of-service prong of the definition correlates with age. However, *Hazen Paper* teaches that mere correlation with age is not enough. *Hazen Paper,* 507 U.S. at 609–11, 113 S.Ct. at 1706 ("When an employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is."). Furthermore, being perceived as over-qualified and/or over-experienced is not the equivalent of the denigrating stereotype that competence and productivity decline with age. For these reasons, I find that a claim that Roche made an employment decision based solely on the perception that an employee was over-qualified and/or over-experienced does not state a cause of action under the ADEA. *See Bay v. Times Mirror Maga-*

*zines, Inc.,* 936 F.2d 112, 118 (2d Cir.1991) (pre-*Hazen Paper* decision stating that the ADEA does not forbid "employers from declining to place employees in positions for which they are overqualified on the ground that overqualification may affect performance negatively").

*Factor 9—"No Longer Fits into Organization":* Next, some plaintiffs allege that they were terminated because Roche believed that they no longer fit into the organization. Plaintiffs define this term as follows:

A plaintiff will be considered to have been terminated because Roche believed that said plaintiff no longer fit into the organization, for the purposes of plaintiff's answers to defendant's contention interrogatories, if such person:

a) was at least 10 years older than the average age of members in his/her work unit group; or

b) had a supervisor who was at least 12 years younger than the individual plaintiff terminated; or

c) was considered by Roche to have "been around too long", as indicated by statements made by Roche to that or a similar effect.

Optional other factors supporting the inclusion of an individual within this category include:

a) at least 20 years of credited service.

Zackin Aff. Ex. C at 10–11 (attached as Exhibit 2 to Roche App.).

■ Roche is only challenging factor c. Roche argues "[t]hat a plaintiff was considered 'to have been around too long' fails for the same reason ... factors 6 and 7 fail ...—because mere statements that somebody is 'less productive' [factor 6] or 'has limited skills' [factor 7] or 'has been around too long' are not actionable unless the reason for that belief is the age of the plaintiff." Roche Br. at 26. Roche's argument fails for the same reason it did with respect to factors 6 and 7. This is in effect a motion to dismiss. Therefore, I must view the allegation liberally. After doing so, I conclude that a claim that Roche considered subpart c of factor 9 in terminating a plaintiff states a cause of action under the ADEA.

*February 1994 Supplemental Factor— Subjective Decisionmaking:* Lastly, plaintiffs allege that Roche considered the following in determining who would be fired:

Plaintiffs herewith identify the following overarching factor in the employment decision made with regard to all plaintiffs: Hoffmann–La Roche Inc.'s policy and practice of basing Operation Turnabout termination decisions on subjective criteria applied by line managers and supervisors.

Zackin Aff. Ex. A (attached as Exhibit 2 to Roche Supp.App.). With respect to this factor, plaintiffs state in their brief that

This factor covers Plaintiffs' disparate impact *and* disparate treatment claims.... That is, in combination with their statistical evidence, Plaintiffs will seek to show that conscious and/or unconscious age bias infected Roche's decision making process, resulting in *disparate treatment* of older workers. At the same time, Roche's apparent use of wholly subjective criteria could also be viewed as involving "age-neutral" considerations which had a disparate impact on the selection of older workers for termination.

Plaintiffs' Br. at 26–27 (emphasis in original).

■ This "factor" is not really a factor at all. Rather, this factor is a restatement of plaintiffs' classwide claims. However, on this motion Roche is only seeking to dismiss the *individual disparate treatment* claims of the 60 individuals. Therefore, plaintiffs' statement that this factor, which applies to all plaintiffs, states a claim for disparate impact is irrelevant to this motion. Second, with respect to disparate treatment, this factor is merely a statement of plaintiffs' classwide pattern-or-practice claim. I have already entered summary judgment against plaintiffs on that claim. Furthermore, to the extent that plaintiffs allege that reliance on subjective factors in firing someone by itself violates the ADEA, they are clearly mistaken. The Supreme Court clarified in *Hazen Paper* that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Hazen Paper,* 507 U.S. at 609, 113 S.Ct. at 1705. Therefore, an allega-

tion that Roche based termination decisions on subjective factors clearly is insufficient to state a cause of action under the ADEA. Therefore, consideration of this "factor" is irrelevant to this motion.

Thus, to summarize, I have found that claims that Roche based termination decisions on high salary, ample retirement benefits, age-related disabilities, proximity to retirement, and/or a perception that an employee is over-qualified or over-experienced do not state causes of action under the ADEA. On the other hand, claims that Roche fired employees based on perceptions that they were less productive or creative, had limited skills or a limited ability to acquire new skills, or no longer fit into the organization do state causes of action under the ADEA. Twenty-eight of the sixty plaintiffs whose individual claims Roche is moving to dismiss rely solely on allegations that they were terminated because of their high salary, ample retirement benefits, age-related disability, proximity to retirement, and/or a perception that an he or she was over-qualified or over-experienced. *See* Zackin Aff. Ex. B (attached to Roche App. at Ex. 2).

 The question now is whether the individual disparate treatment claims of these 28 plaintiffs should be dismissed.[4] Plaintiffs argue that the claims of these plaintiffs should not be dismissed because, for among other reasons, their answers to the contention interrogatories do not preclude them asserting an additional theory that is consistent with *Hazen Paper*. Specifically, plaintiffs argues that they should be given an opportunity to demonstrate that Roche's decision makers supposed a correlation between the invalid factors and age. For example, plaintiffs argue that they should be allowed to pursue the theory that Roche supposed that those employees who

had the highest salaries were older, and therefore, fired persons with high salaries as a means to fire older workers.

In *Hazen Paper*, the Supreme Court recognized that such a claim would state a cause of action under the ADEA. The Court stated that

> [w]e do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination. Pension status may be a proxy for age, not in the sense that the ADEA makes the two equivalent, . . ., but in the sense that the employer may suppose a correlation between the two factors and act accordingly.

*Hazen Paper*, 507 U.S. at 612, 113 S.Ct. at 1707. Thus, such a claim by plaintiffs would state a cause of action under the ADEA.

The plaintiffs, however, have stated no such claim in their answers to the contention interrogatories. Roche argues that this should preclude plaintiffs from pursuing this additional theory of discrimination. Thus, the resolution of this issue turns on the effect that is to be given to answers to contention interrogatories.

### 2. Contention Interrogatories

Contention interrogatories are authorized by Federal Rule of Civil Procedure 33(c), which provides, in part, that "[a]n interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact. . . ." When this portion of the rule was added in 1970, it was denominated as Rule 33(b). The Advisory Committee Note to the 1970 Amendment to Rule 33(b) provides that "requests for opinions or con-

---

**4.** As discussed in footnote 3 above, the plaintiffs who assert that Roche relied on factor 1—high salary—have arguably stated a cause action based on optional factor "a." These plaintiffs are arguably not merely claiming that they were fired because they had a high salary, but rather, are claiming that they were fired because Roche wanted to replace them with a younger worker and high salary was merely a pretext for such discrimination. All but three of the 28 plaintiffs

who do not rely on either factors 2, 6, 7, or 9 rely on factor 1. Therefore, arguably, the claims of only 3 plaintiffs are at issue here. However, also as stated above in footnote 3, because I am denying Roche's motion to dismiss as to all 60 plaintiffs, I will proceed under the assumption that in factor 1 plaintiffs only intended to assert a claim that firing someone based on high salary violates the ADEA.

tentions that call for the application of law to fact ... can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." Fed.R.Civ.P. 33(b), Advisory Committee Note to 1970 Amendment.

Although contention interrogatories serve this salutary purpose, the Advisory Committee has noted a potential drawback to the rule. The Advisory Committee stated that "[t]he principal question raised with respect to the cases permitting such interrogatories is whether they reintroduce undesirable aspects of the prior pleading practice, whereby parties were chained to misconceived contentions or theories, and ultimate determination on the merits was frustrated." *Id.* (citing James, "The Revival of Bills of Particulars under the Federal Rules," 71 Harv.L.Rev. 1473 (1958)). In allaying the fear that contention interrogatories may frustrate the ultimate determination of a claim on the merits, the Advisory Committee noted that "there are few if any instances in the recorded cases demonstrating that such frustration has occurred." *Id.* This is because

> [t]he general rule governing the use of answers to interrogatories is that under ordinary circumstances they do not limit proof. *See, e.g., McElroy v. United Air Lines, Inc.,* 21 F.R.D. 100 (W.D.Mo.19[5]7); *Pressley v. Boehlke,* 33 F.R.D. 316, 317 (W.D.N.C.1963). Although in exceptional circumstances reliance on an answer may cause such prejudice that the court will hold the answering party bound to his answer, *e.g., Zielinski v. Philadelphia Piers, Inc.,* 139 F.Supp. 408 (E.D.Pa.1956), the interrogating party will ordinarily not be entitled to rely on the unchanging character of the answers he receives and cannot base prejudice on such reliance.

*Id. Accord Marcoin, Inc. v. Edwin K. Williams & Co., Inc.,* 605 F.2d 1325, 1328

(4th Cir.1979) ("As a general rule, an answer to an interrogatory does not conclusively bind the answering party in all instances.") (citations omitted); 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, § 2181, at 343–44 (2d Ed.1994) ("It is quite true that interrogatories often must be answered early in the case before a party has completed its investigation and before it has a full understanding of the case. To hold it to that early understanding, as an occasional case purports to do, would be quite wrong. But the remedy is not to excuse it from answering the interrogatory but to hold that it is not irrevocably bound to the answer it gives.").

Roche has not claimed that it would be prejudiced by allowing plaintiffs to pursue the additional theory. Roche does argue, however, that plaintiffs should not be permitted to pursue their supposition theory because

> [i]n the 10–plus months since plaintiffs first made this assertion in their brief to the Special Master plaintiffs have not attempted to adduce one iota of supposition evidence despite the numerous depositions they have taken and the discovery propounded since then. Thus, plaintiffs' "supposition" theory should also be dismissed as a makeweight.

Roche Br. at 28. This may be so. However, this motion is in effect a motion to dismiss, and therefore, whether or not plaintiffs can support their claim with evidence is irrelevant at this point. When discovery is completed with respect to these plaintiffs' individual claims, then Roche may move for summary judgment. Therefore, because I find that the individual plaintiffs may pursue the "supposition" theory, Roche's motion to dismiss the individual disparate treatment claims of the 60 plaintiffs must be denied.[5]

---

**5.** I note that when plaintiffs submitted the full panoply of their pattern-or-practice evidence in connection with Roche's motion for summary judgment on the pattern-or-practice claim, they submitted evidence that they characterize, in their brief submitted with respect to this motion, as supporting their "supposition" theory. *See* Plaintiffs' Opp.Br. at 32–37. This evidence does not seem properly characterized as "supposition" evidence because plaintiffs seem to be arguing that reliance on factors such as "ample retirement benefits" and "proximity to retirement" *pre se* constitute age discrimination, which is different than claiming that Roche supposed that older workers had ample retirements benefits, and therefore, terminated workers with ample retirement benefits as a means of firing older workers. In any event, all of this evidence was submitted in connection with plaintiffs' opposition to Roche's motion for summary judg-

**B. Motion In Limine**

■ Roche also moves for an *in limine* ruling precluding plaintiffs from offering evidence of age discrimination based on the factors asserted by plaintiffs that no longer apply after *Hazen Paper.* I am denying this motion as premature. This is because it is difficult to rule on the admissibility of pieces of evidence prior to trial. It is often useful to wait to see how the trial unfolds. That being said, I want to make clear that my ruling that decisions based on high salary, ample retirement benefits, an age-related disability, proximity to retirement, and/or a perception that an employee is over-qualified or over-experienced (as defined by the plaintiffs) are not by themselves evidence of age discrimination will obviously apply in any trial in this action. However, how these rulings relate to the admissibility of specific pieces of evidence can not be determined at this time. For this reason, Roche's motion for an *in limine* ruling is denied.

**III. Conclusion**

For the reasons detailed above, Roche's motion to dismiss the individual disparate treatment claims of 60 plaintiffs is DENIED, and Roche's motion for an *in limine* ruling is also DENIED.

ment on plaintiffs' pattern-or-practice claim and fully considered in the resolution of that motion. Therefore, the ruling that the existence of a supposition theory of discrimination prevents the dismissal of the individual disparate treatment claims of 60 plaintiffs does not affect the decision granting Roche's motion for summary judgment on plaintiffs' pattern-or-practice claim.