Carl A. GEIGER

v.

AT & T CORPORATION and Devon
Consulting Company.

Civ. A. No. 96–1228.

United States District Court,
E.D. Pennsylvania.

April 17, 1997.

## MEMORANDUM

CAHN, Chief Judge.

Plaintiff Carl A. Geiger has sued his former employers, AT & T Corporation and Devon Consulting Company, asserting claims of age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA") and promissory estoppel. Before the court are motions by both defendants for summary judgment. For the reasons stated below, the motions for summary judgment are granted.

## I. FACTS AND PROCEDURAL HISTORY

In 1953, Carl Geiger began his employment with Bell Telephone Company, the predecessor of Defendant AT & T Corporation.[1] While employed for Bell Telephone, and later for AT & T, Geiger held a variety of positions related to the assembly and operation of hardware and computer equipment. In 1986, he was employed at the AT & T Microelectronics Building in Allentown, Pennsylvania as a systems technician. Complaint at ¶¶ 9–10.

In 1986, AT & T offered Geiger an early retirement package. Geiger, interested in the package, asked his manager, John Blozinski, whether AT & T would hire him as a contracted outsourcing employee (hereinafter, "outsource contractor") if he were to accept the early retirement package. Deposition of Carl A. Geiger ("Geiger Dep.") at 22–24. Blozinski informed Geiger that AT & T would hire him as an outsource contractor. Geiger Dep. at 30–31. Geiger, aware of AT & T's practice of hiring contractors only through outside employee leasing and consulting companies, contacted Devon Consulting Company ("Devon")[2] about working through Devon for AT & T. *Id.* at 31–33. Devon agreed to represent Geiger as an outsource contractor to AT & T. Geiger accepted AT & T's retirement package, and retired from AT & T on or about September 30, 1986. Complaint at ¶ 11. He was 54 years old at the time.

Immediately following his retirement, Geiger returned to his job duties at AT & T as an outsource contractor through Devon. His job responsibilities were unchanged by his new contractor status. Complaint at ¶ 13. He reported to the same building and to the same manager as he had before retirement, and AT & T continued to provide Geiger with both his assignments and any tools or support he needed for those assignments. Geiger's contact with Devon was limited. Certification of Carl Geiger, Exh. A in Support of Opposition to AT & T Mot. for Judgment on the Pleadings ("Geiger–AT & T Certif.") at ¶ 10. He mailed his time sheets to and received his paychecks from Devon, but in his day-to-day job responsibilities, it was as if he had never left AT & T's employ.

In March of 1993, John Herbine, Geiger's then-supervisor at AT & T, explained to Geiger that because of an AT & T policy, AT & T could no longer employ Geiger as an outsource contractor. Geiger Dep. at 82–83. The content of this policy is in dispute. Geiger claims that the policy was explained in a letter by Administrative Director William Collier which was shown to him by Herbine. According to Geiger, the "letter specifically stated language to the effect that AT & T *retirees* were not permitted in any AT & T Microelectronics building beyond on or about March 31, 1993." Pltf. Mem. Opp.

---

1. In 1996, AT & T divested its manufacturing operations, including AT & T Microelectronics, the division of AT & T for which Geiger worked. AT & T Microelectronics became part of the new Lucent Technologies, Inc., and it is Lucent Technologies which has filed the motions before the court. However, because the events that form the basis of this case took place before divesti-ture, and because the parties refer to this defendant as AT & T, this opinion also refers to AT & T rather than Lucent Technologies.

2. At the time, Devon Consulting was known as Data Processing Reference Corporation.

to Judg. on Pleadings, at 5 (emphasis in original). According to AT & T, the policy was not limited to retirees because it prohibited all *former employees* from working as outsource contractors for AT & T. The content of this policy will be discussed in more detail below.

John Herbine also informed Devon's Malcolm Hoffman that because of the new policy, AT & T would not renew its contract for Geiger's services, and that Geiger's assignment at AT & T would end on March 31, 1993. Declaration of Malcolm Hoffman, Exh. C to Devon Mot.Summ.Judg. ("Hoffman Decl."), at ¶ 5. Geiger's employment with Devon ended on March 31, 1993. Following the termination, both Devon and Geiger made several unsuccessful attempts to find additional assignments for Geiger.

Geiger pursued administrative remedies with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission. After requesting and receiving administrative dismissal of the complaint, he filed suit against AT & T and Devon on February 20, 1996. On September 9, 1996, this court granted AT & T's motion to dismiss Geiger's claim of tortious interference with contract based on Geiger's failure to comply with the applicable Pennsylvania statute of limitations. On October 1, 1996, AT & T moved for judgment on the pleadings. Because resolution of the motion would have required the court to look beyond the face of the pleadings, I converted the motion for judgment on the pleadings to one for summary judgment pursuant to Federal Rule of Civil Procedure 12(c). This court's Order of December 16, 1996 gave notice of the conversion and allowed the parties additional time to conduct discovery and supplement their briefs. On February 3, 1997, Devon moved for summary judgment. Both motions are now before the court.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court's role is to determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party, with all reasonable inferences viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 255, 106 S.Ct. 2505, 2510–11, 2513–14, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of material fact exists; however, if the nonmoving party fails to produce sufficient evidence in connection with an essential evidence of a claim for which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## III. THE AGE DISCRIMINATION CLAIMS

■ The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1).[3] A plaintiff can sustain an age discrimination claim by presenting direct or

---

3. AT & T argues that Geiger is not entitled to the protections of the ADEA because he was not an AT & T employee at the time the alleged discrimination occurred. Rather, he had retired from AT & T and was employed by Devon, and he worked at AT & T only through a contracting arrangement with Devon. Geiger contends that he fits the definition of an AT & T employee under the multifactored analyses of *EEOC v. Zippo Mfg. Co.,* 713 F.2d 32 (3d Cir.1983) (employing a hybrid standard of the common law right to control test with an "economic realities" approach to determine whether a plaintiff is an employee or an independent contractor under the ADEA), and *Nationwide Mutual Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (employing common law agency principles to discern the existence of an employer-employee relationship when the statute at issue did not helpfully define the terms). The court finds that the facts of this case make the question of whether Geiger was an employee of AT & T a close one, and one that need not be resolved in order to grant AT & T's motion for summary judgment. Therefore, the court will not rule on the issue of whether AT & T, Devon, or both were Geiger's employer for ADEA purposes, but will assume for purposes of the summary judgment motions that Geiger was an employee of both Defendants.

circumstantial evidence, and a defendant-employer succeeds on summary judgment only if it shows that "the plaintiff will be unable to introduce either direct evidence of a purpose to discriminate or indirect evidence by showing that the proffered reason is subject to factual dispute." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir.1990) (citation omitted).

## A. Direct Evidence of Age Discrimination

Direct evidence of age discrimination exists when the evidence "directly reflect[s] a discriminatory ... animus on the part of a person involved in the decisionmaking process." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir.1994) (citations omitted). In such a case, "[w]hat is required is ... direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 1805, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring).

### 1. AT & T

Geiger's claim of age discrimination against AT & T is based on the company's policy which led to his termination. AT & T and Geiger disagree on the contents of that policy. AT & T claims that the policy prohibited engaging all former AT & T employees as outsource contractors; Geiger claims the policy prevented only AT & T retirees from being hired as outsource contractors. The policy is Geiger's only direct evidence of age discrimination.

Geiger has presented no factual support for his position that the AT & T policy prohibited the engagement of only retirees. AT & T has presented significant evidence that the policy actually excluded all former employees from outsource contractor positions, and Geiger has presented no evidence that creates a genuine factual dispute about which groups were covered by the policy.

AT & T has presented a memorandum dated March 2, 1992 by Administrative Director William Collier, explaining the new AT & T policy and entitled "Policy on Engaging Outside Consultants":

> The following policy is effective immediately throughout NSG [4] ...
>
> 1. Employees retiring or leaving the payroll through force reduction actions cannot be hired as individual or project consultants.
>
> 2. Employees who have formed an outside consulting firm cannot be contracted for consulting services.
>
> 3. Employees working for other established consulting firms cannot be hired for consulting purposes.
>
> . . . . .
>
> In light of this new policy, you should review for TERMINATION all contracts, ... with outside consulting firms or individuals which appear to have been entered into for the purpose of continuing employment arrangements with former [AT & T Microelectronics] employees. Termination of existing contracts must be completed by March 31, 1992.

AT & T Mot. for Judg. on Pleadings, Exh. A (emphasis in original). The parties have also presented two nearly identical memoranda, one dated February 15, 1993 by Collier and the other dated March 10, 1993 by Human Resources Manager Kathleen Perdick. Both are entitled "Nonpayroll Worker Policy," and both outline the revised policy for the engagement of nonpayroll outsource contractors:

> When applicable, the revised Policy requires that the hiring manager first consider existing AT & T employees before using other sources.... [If no suitable AT & T candidate can be found, the hiring manager will be granted authorization] to engage the services of external vendors or, lastly, to engage the services of an independent contractor.
>
> . . . . .
>
> As you know, former AT & T employees *cannot be hired to provide consultant or contractor services.* For those former AT

---

**4.** Though it is unclear in the record, the court believes that "NSG" stands for Network Systems Group.

& T employees currently under contract, termination of said contracts are scheduled to be completed by March 31, 1993.

Pltf.Mem.Opp. to Judg. on Pleadings, Exh. B (Collier memo), Exh. D (Perdick memo) (emphasis in original).

Geiger argues that the existence of several versions of the AT & T policy letter creates a genuine factual dispute over the policy's content. The court disagrees. While there may have been several versions of the policy letter, every letter presented to this court states that the policy applies to all former AT & T employees. Geiger has not presented evidence of the existence of a policy letter which would permit outsource contracting by former employees but not by retirees. The only evidence of the existence of such a no-retirees policy comes from Geiger's own certification, which states that the policy letter shown to him by supervisor John Herbine in March of 1993 contained "language to the effect that all AT & T retirees would not be permitted in any AT & T Microelectronics buildings beyond on or about March 31, 1993." Geiger–AT & T Certif., at ¶ 18.[5] While the court is aware of its obligation to resolve any factual issues in favor of Geiger at this phase of the proceedings, the unspecific allegation of Geiger alone does not create an issue of fact. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990) (object of summary judgment provision is "not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.")[6]

If, as Geiger contends, the AT & T policy violated the ADEA by excluding only retirees, one would expect evidence of the following: first, that former AT & T employees who were not AT & T retirees would still be working as outsource contractors for the company; and second, that retirees of other companies would not be working at AT & T as outsource contractors. In evaluating whether a genuine factual dispute exists regarding the content of the policy, the court finds it extremely important that Geiger has presented evidence of neither proposition. He has presented no evidence of former, non-retired, AT & T employees working as AT & T outsource contractors, and he has admitted that to the best of his knowledge, AT & T continues to hire retirees of other companies as outsource contractors. Geiger Dep., at 176–78. Had Geiger presented some evidence either of former AT & T employees remaining at AT & T as contractors or of retirees from other companies being refused contract work, the court would likely find a factual dispute about the policy's contents. Without any such evidence, the documentation establishes that the policy was directed at *all* former AT & T employees; it was not limited to retirees.

■ Furthermore, even if the court accepted Geiger's unsupported claim that the policy excluded only retirees, such a policy would not violate the ADEA. The ADEA prohibits employers from making employment decisions based on age. 29 U.S.C. § 623(a). In a disparate treatment case such as this one, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993) (citations omitted). The "very essence of age discrimination" is when an employer fires an older employee "because the employer believes that productivity and competence decline with old age." *Id.* Employment decisions are permissible if "based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). When an employment decision is based on factors other than age, "the problem of inaccurate and stigmatizing stereo-

5. According to Herbine, the only memorandum he showed Geiger was Collier's February 15, 1993 "Nonpayroll Worker Policy" memo. Affidavit of John Herbine, Exh. B to AT & T Reply Mem. in Support of Mot. for Judg. on Pleadings ("Herbine Aff."), at ¶¶ 4–5.

6. It is worth noting that Geiger's contention that "language to the effect that all AT & T retirees would not be permitted in any AT & T Microelec-

tronics buildings" does not contradict AT & T's contention that the policies excluded all AT & T former employees, since "AT & T retirees" is a subset of "AT & T former employees." *See Lujan,* 497 U.S. at 888, 110 S.Ct. at 3188–89 (summary judgment inappropriate only when "facts specifically averred by [the non-movant] contradict facts specifically averred by the movant[.]")

types disappears." *Hazen Paper*, 507 U.S. at 611, 113 S.Ct. at 1706. "This is true even if the motivating factor [in the employment decision] is correlated with age." *Id.*

In *Hazen Paper*, the Supreme Court held that an employer's decision to fire an employee because the employee's pension benefits were about to vest did not violate the ADEA. Despite the fact that pension status is positively correlated with age, "an employee's age is *analytically distinct* from his years of service," and it is years of service, rather than age, which causes a pension to vest. *Id.* (emphasis added). Because age and years of service are analytically distinct, employers can take one factor into account while ignoring the other. Therefore, while firing based on pension status might violate another statute, the Court held that such a decision does not violate the ADEA because it is not "age-based." *Id.*

Since *Hazen Paper*, claims of age discrimination based on company policies or decisions which involved factors positively correlated with age have been rejected. For example, high salary is often positively correlated with age because workers with higher salaries tend to be older workers who have been with a company for longer periods of time. *Sperling v. Hoffmann–La Roche, Inc.*, 924 F.Supp. 1396, 1404 (D.N.J.1996) (citations omitted). Nevertheless, the courts have held that termination decisions based on compensation level do not violate the ADEA, because age is analytically distinct from salary and benefit level. *Woroski v. Nashua Corp.*, 31 F.3d 105, 109–110 n. 2 (2d Cir.1994); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1126 (7th Cir.1994); *Sperling*, 924 F.Supp. at 1404–05. Courts have come to a similar conclusion about terminating employees with the most seniority. *Adams v. Dupont Merck Pharmaceutical Co.*, Civ.A. No. 93–207, 1994 WL 702606, at *5 n. 1 (E.D.Pa. Dec. 15, 1994), *aff'd mem.*, 70 F.3d 1254 (3d Cir.1995); *Bornstad v. Sun Co., Inc.*, Civ.A. No. 92–3080, 1993 WL 257310, at *2 (E.D.Pa.

June 28, 1993), *aff'd mem.*, 19 F.3d 642 (3d Cir.1994). In addition, terminating employees based on age-related disabilities does not violate the ADEA. *Beith v. Nitrogen Products, Inc.*, 7 F.3d 701, 703 (8th Cir.1993) (decision to fire plaintiff based on a degenerative back condition which may be more prevalent in older workers not an age-based decision).

Geiger contends that exclusion on the basis of retirement status is different from the employers' considerations in *Hazen Paper* and its progeny "because one cannot qualify for retirement … and not be within the protected age class." Pltf.Mem. in Opp. to Judg. on Pleadings, at 17. Geiger's argument is based on an opening left by the Supreme Court in *Hazen Paper*:

> We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination. Pension status may be a proxy for age, not in the sense that the ADEA makes the two factors equivalent, but in the sense that the employer may suppose a correlation between the two factors and act accordingly.

*Hazen Paper*, 507 U.S. at 612–613, 113 S.Ct. at 1707 (internal citation omitted). *Hazen Paper* therefore limits, but does not eliminate, what commentators refer to as the "age proxy" doctrine.[7] However, the fact that an AT & T outsource contractor could not be a retiree unless he was also in the protected age class does not compel the conclusion that retirement status is a proxy for age. To raise an issue for trial on age proxy discrimination, Geiger must create an issue of fact as to whether AT & T used the correlation between retirement status and age as a shield to terminate retirees' contracts because of their age. *See Heath v. Massey–Ferguson Parts Co.*, 869 F.Supp. 1379, 1394 (E.D.Wis.1994), *rev'd on other grounds sub nom. Heath v. Varity Corp.*, 71 F.3d 256 (7th

---

7. The age proxy doctrine refers to an employer's consideration of a factor other than age that is either inexorably linked with age or strongly correlated with age. *See*, Toni J. Querry, "A Rose by any Other Name No Longer Smells as Sweet: Disparate Treatment Discrimination and the Age Proxy Doctrine After Hazen Paper Co. v. Biggins,", 81 Cornell L.Rev. 530, 548–555 (1996) (explaining that *Hazen Paper* substantially limited the age proxy doctrine as it had previously been applied in the lower courts).

Cir.1995). In *Heath,* the employer considered eligibility for retirement benefits in making termination decisions. However, the fact that eligibility for retirement benefits was perfectly correlated with membership in the protected age class was insufficient to raise the issue of age proxy discrimination, because the plaintiff presented no evidence that eligibility for retirement was being used as a proxy for age. *Id.* Similarly, in *Sperling,* the court held that the decision to terminate certain employees because they had "ample retirement benefits" did not violate the ADEA. 924 F.Supp. at 1405. Despite perfect correlation between age and retirement benefits (the employees falling into the "ample retirement benefits" category were all at least 50 years old), the company's decisions did not involve "the problem of inaccurate and stigmatizing stereotypes" about older workers. Therefore, consideration of retirement benefits did not violate the ADEA. *Id.* at 1406, *quoting Hazen Paper,* 507 U.S. at 611, 113 S.Ct. at 1706–07. The Court of Appeals for the Fifth Circuit has reached a similar conclusion, holding that an employer's consideration of "fast-approaching eligibility for retirement benefits" in making a termination decision is not age discrimination. *Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 152 (5th Cir.1995).

■■■ An opinion from the Ninth Circuit seems to disagree with the rulings of *Heath, Sperling,* and *Armendariz.* In *EEOC v. Local 350, Plumbers and Pipefitters,* 998 F.2d 641, 646 (9th Cir.1992), *as amended on denial of reh'g* (9th Cir.1993), the Ninth Circuit Court of Appeals held that a union hiring hall's policy of refusing to allow retired union members to seek work while receiving pensions violated the ADEA. This court finds *Local 350 's* reasoning unpersuasive in light of *Hazen Paper. Local 350* held that the union's policy violated the ADEA because it

was based on "a factor very closely related to age." *Id.,* at 646. After *Hazen Paper,* reliance on a factor closely correlated with age, without evidence that the employer "suppose[d] a correlation between the two factors and act[ed] accordingly," *Hazen Paper* at 613, 113 S.Ct. at 1707–08, is not age discrimination.[8] This court agrees with *Heath, Sperling* and *Armendariz* that an employer's consideration of retirement status is insufficient to defeat summary judgment on an ADEA claim. The plaintiff must demonstrate the existence of a factual issue regarding whether an employer has attempted to use retirement as a shield or proxy for age discrimination.

Geiger has presented no evidence that any decision to exclude AT & T retirees was actually a proxy for excluding older employees. In fact, as discussed above, he has admitted his belief that AT & T continues to employ retirees from other companies as outsource contractors. Geiger Dep., at 176–178. In the absence of such proof, the court can make no inference that AT & T used retirement status as a proxy for age. This court finds that even if the AT & T policy was based on retirement, rather than former employee status, AT & T's consideration of retirement status was analytically distinct from age and not a proxy for age discrimination.

Plaintiff therefore has presented no direct evidence of age discrimination against AT & T. The documentation establishes that the policy was actually targeted at all former employees. Moreover, without some evidence of age proxy discrimination, both retirement status and former employee status are analytically distinct from age according to the *Hazen Paper* analysis.

### 2. Devon Consulting

■■■ Geiger has presented no evidence of direct discrimination by Devon. His theory

---

8. It is worth noting that the original decision in *Local 350* was issued before the Supreme Court's ruling in *Hazen Paper.* The amended decision was issued after *Hazen Paper,* but the court mentioned the Supreme Court case only in a footnote. In that note, the court advised that the district court, on remand, "should direct the EEOC to articulate its theory or theories of discrimination in accordance with the principles set forth in *Hazen,*" implying that more than just

correlation would be required for an ADEA violation. *Local 350,* 998 F.2d at 648 n. 2. Furthermore, the only published opinion relying on this portion of *Local 350* to deny summary judgment involved evidence that the employer, in making its layoff decision, looked directly at the plaintiff-employee's age as part of its consideration of his "expressed intent to retire." *EEOC v. California Micro Devices Corp.,* 869 F.Supp. 767, 771–773 (D.Ariz.1994).

of a direct case against Devon is that Devon knew about the discriminatory AT & T policy and did nothing to change it or to protect Geiger from its ramifications. Therefore, Geiger contends, Devon "aided and abetted the intentional discriminatory treatment" by AT & T, and is subject to ADEA liability pursuant to the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 *et seq.* ("PHRA"). Pltf.Mem. in Opp. Devon Mot. Summ.Judg., at 10. The court presumes that Geiger is referring to section 955(e) of the PHRA, which prohibits the aiding or abetting of discrimination. However, Geiger's complaint does not allege a violation of the PHRA or assert rights pursuant to the PHRA; his discrimination complaints are based solely on federal law. The ADEA does not mention liability for aiding and abetting discrimination, and the courts have recognized that the PHRA "contemplates liability that extends beyond" federal prohibitions. *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir.1996) (noting that § 955(e) of the PHRA prohibits the aiding and abetting of discrimination, whereas Title VII does not). This court will not sustain a cause of action under the ADEA based on a alleged violation of the PHRA. Therefore, Geiger has no direct evidence of age discrimination against Devon.[9]

### B. Circumstantial Evidence of Age Discrimination

Even without direct evidence of discrimination, a plaintiff may prevail by presenting circumstantial evidence under the burden shifting analysis of *McDonnell Douglas–Burdine. Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a plaintiff must first present a prima facie case by establishing that (1) he is over 40 years of age; (2) he is qualified for the position in question; (3) he suffered from an adverse employment decision; and (4) his replacement was sufficiently younger to permit an inference of age discrimination. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.1995). If the plaintiff establishes this prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Id.* If the defendant can present evidence of such a nondiscriminatory reason for the decision, the burden shifts to the plaintiff to present evidence that "the employer's stated reasons were not its true reasons but a pretext for discrimination." *Id.* (citation omitted).

### 1. AT & T

Geiger contends that he has presented a prima facie case of age discrimination, and argues that the reason AT & T puts forth for the termination (the policy) is pretextual. The first policy letter excluding former employees arrived in March 1992, and Geiger's outsource contract was not terminated until March 1993. Geiger relies on this lapse of time to contend that the policy was merely a pretext for firing him; the real reason was age.

There are two major flaws in Geiger's argument. First, he has not presented evidence sufficient to make out a prima facie case; second, he has not presented evidence that would allow a reasonable jury to disbelieve AT & T's proffered explanation for terminating his outsource contract.[10]

■ First, Geiger has not met the fourth prong of his prima facie case. The Third

---

9. This court would ordinarily permit Geiger to amend his complaint to include a PHRA claim. However, even if Geiger had requested an opportunity to amend, this court would refuse because adding a claim pursuant to Pa.S.A. § 955(e) would avail Geiger of nothing. It is well-settled that there can be no liability for "aiding and abetting someone to do an innocent act." *Shuttlesworth v. City of Birmingham*, 373 U.S. 262, 265, 83 S.Ct. 1130, 1132, 10 L.Ed.2d 335 (1963) (citations omitted). The AT & T policy did not violate the ADEA; therefore, any aiding and abetting of the policy's implementation did not violate the ADEA.

10. The court is not required to examine the evidence of pretext if Geiger cannot make out a prima facie case of discrimination. *See Kotarski v. Binks Mfg. Co.*, 837 F.Supp. 247, 252, 255 (N.D.Ill.1992). Nevertheless, in the interest of completeness, the court will briefly examine both the prima facie case's insufficiencies and the non-existence of any evidence of pretext.

Circuit Court of Appeals has noted that this prima facie case framework "is not intended to be onerous." *Sempier,* 45 F.3d at 728 (citation omitted). However, plaintiffs may not ignore an element of the prima facie case. Geiger has presented no evidence that AT & T replaced him with or delegated his job responsibilities to younger employees, sought new applicants for his job, or treated younger employees differently than he was treated; therefore, no reasonable jury could conclude that Geiger was treated less favorably than or replaced by younger employees. For this reason, he has not met the elements of a prima facie case of age discrimination against either AT & T or Devon. *See, MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1442–43 (10th Cir.1996) (affirming a grant of summary judgment when plaintiff presented no evidence to show he was replaced by a younger employee).

■ Furthermore, even if Geiger had established a prima facie case, his only evidence to support a finding of pretext is that the AT & T policy was written in 1992 but his contract with AT & T was not terminated until March of 1993. Thus, he contends that the policy was not the real reason he was fired. The Court of Appeals for the Third Circuit has addressed the issue of what evidence a plaintiff must produce in order to defeat summary judgment on a pretext question:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons ... was either a *post-hoc* fabrication or otherwise did not actually motivate the employment action.... [T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence....

*Fuentes v. Perskie,* 32 F.3d 759, 764–65 (3d Cir.1994) (emphasis in original) (citations and internal quotation marks omitted). The fact that Geiger's contract with AT & T was not terminated until a year after the original policy was promulgated does not create the kind of inconsistency required by *Fuentes.* A policy such as the one at issue in this case would naturally take time to put into effect. In fact, AT & T has produced a memorandum by Collier dated September 10, 1992 which states:

> During the April 6, 1992 Management Committee Meeting, approvals were given to honor existing contracts of former AT & T employees with the understanding that the termination of these existing contracts must be completed by March 31, 1993.

AT & T Reply Mem. in Support of Mot. for Judg. on Pleadings, Exh. A. A follow-up memorandum by Human Resources Manager Mary T. Ridge refers to the September 10 Collier memo and explains the efforts of the Microelectronics division in "pleading" with the policymakers to extend then-existing contracts with former AT & T employees deemed "critical to the operation of the business." *Id.,* Exh. C. Other than emphasizing the year-long lapse between the announcement of the policy and his contract's termination, Geiger has presented no direct or circumstantial evidence of pretext. His subjective belief that AT & T was discriminating against him is insufficient to create a jury issue of pretext. *See Molnar v. Ebasco Constructors, Inc.,* 986 F.2d 115, 119 (5th Cir. 1993) (citation omitted). This court finds that the various AT & T policy memoranda, the lapse between the first announcement of the policy and Geiger's termination, and Geiger's belief that he was fired because of his age do not provide a record which "could support an inference that the employer did not act for non-discriminatory reasons." *Sempier,* 45 F.3d at 732 (citation omitted).

Comparing the facts in *Sheridan* and in the recent case of *Bray v. Marriott Hotels,* Title VII cases, with the evidence presented in this case illustrates why summary judgment is appropriate in this case on the question of circumstantial evidence of age discrimination. *Bray v. Marriott Hotels,* 110 F.3d 986 (3d Cir.1997); *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1072 (3d Cir.1996), *petition for cert. filed,* 65

U.S.L.W. 3571 (U.S. Feb. 3, 1997).[11] First, in *Sheridan*, the plaintiff satisfied the elements of a prima facie case of constructive discharge on the basis of gender. 100 F.3d at 1063. Similarly, in *Bray*, the plaintiff presented a prima facie case that she had been passed over for a promotion because of her race. 110 F.3d at 990–91. Here, Geiger has failed to demonstrate the fourth prong of a prima facie case for termination of the basis of age, that "he was replaced by a sufficiently younger person to create an inference of age discrimination." *Sempier*, 45 F.3d at 728. In fact, Geiger has failed to identify whether anyone replaced him or took over his responsibilities at AT & T. Therefore, unlike *Sheridan* and *Bray*, Geiger has not created a prima facie presumption of discrimination.

Second, in *Sheridan* and in *Bray*, the plaintiffs presented evidence which discredited the employers' proffered explanations of their conduct. In *Sheridan*, the record included evidence attacking the credibility of the defendant's witnesses, evidence of retaliation by the defendant, and evidence of the high quality of the plaintiff's work. 100 F.3d at 1074–75. Similarly, the plaintiff in *Bray* presented inaccurate assessments of her work by the employer, discrepancies in the employer's use and selection of its evaluation criteria, and factual disputes about whether plaintiff had been interviewed for the position at issue. 110 F.3d at 990–98. In this case, AT & T contends that Geiger was terminated because of a company policy against hiring former employees as outsource contractors; Geiger's only evidence to discredit that explanation is the length of time between the enactment the policy and his termination. Thus, Geiger's only evidence of pretext is the company's failure to implement its policy quickly. Without more, this evidence does not create an inconsistency in AT & T's explanation, nor does it "cast sufficient doubt" on AT & T's proffered reason for its action for the court to deny summary judgment. *Sheridan* at 1072. Geiger has failed to present any evidence which would permit a reasonable factfinder to conclude that AT & T's proffered explanation for terminating him was pretextual.

## 2. Devon Consulting

Geiger's indirect case of age discrimination by Devon suffers from the same weaknesses as his case against AT & T: he has failed to establish a prima facie case, and has cast no doubt on Devon's proffered reasons for terminating him.

Geiger has failed to produce any evidence that Devon replaced him with younger employees or that it sought younger employees to fill his position. Malcolm Hoffman, the Devon Account Manager responsible for the AT & T account, has stated that Devon did not replace Geiger with another outsource contractor at AT & T. Hoffman Decl., at ¶ 16. Geiger has presented no evidence to the contrary. Therefore, he has failed to establish a prima facie case of age discrimination against Devon.

Furthermore, Geiger has produced no evidence that casts doubt on Devon's proffered reasons for terminating Geiger's employment. Devon has produced evidence that it terminated Geiger's assignment at AT & T because of the AT & T policy against using former employees as outsource contractors, and that Devon had no authority to compel AT & T to allow Geiger to continue as an outsource contractor. Hoffman Decl., at ¶ 6. In addition, it has produced evidence

---

**11.** In *Sheridan*, the district court entered judgment as a matter of law in favor of the defendant-employer, overturning the jury's verdict of constructive discharge. 100 F.3d at 1064. The plaintiff-employee had established her prima facie case, and the employer had responded with a non-discriminatory reason for its action. The district court overturned the verdict because the plaintiff failed to present evidence that her "gender played a determinative role in the defendant's conduct." *Id.* (citation omitted). The Third Circuit Court of Appeals reversed, holding that once a plaintiff satisfies her prima facie case, the jury's determination that the reasons offered by the defendant for its actions were pretextual, i.e., not the real reasons for its conduct, permits the jury to find for the plaintiff. In other words, upon establishment of a prima facie case, if the jury disbelieves the defendant's proffered explanation, "no additional proof of discrimination is *required*" for the jury to find for the plaintiff. *Id.*, at 1071, *quoting St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) (emphasis in original). The court thus firmly rejected any requirement of "pretext-plus."

that Devon contacted Geiger with additional contracting opportunities several times in the months following the termination of Geiger's AT & T assignment. *Id.*, at ¶¶ 8–16.

Geiger has produced no evidence that the reason proffered by Devon for terminating Geiger's AT & T assignment is pretextual. He asserts that Devon's offers of retraining must not have been genuine because the training offered would not have been useful, and that Devon's efforts to find him additional employment were not genuine because the jobs for which Devon contacted him did not match with his skills. Certification of Carl Geiger, Exh. A in Support of Opposition to Devon Mot. for Summary Judgment ("Geiger–Devon Certif."), at ¶ 7; Pltf.Mem.Opp. to Devon Mot.Summ.Judg. at 13.[12] These assertions do not address the termination of the AT & T assignment (the action which forms the basis of Geiger's complaint against Devon), nor do they demonstrate the type of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 764–65.

## IV. PROMISSORY ESTOPPEL

Geiger's complaint also includes a promissory estoppel claim against AT & T. Geiger asserts that he took the early retirement package offered to him in 1986 in reliance on the promise by AT & T that it would rehire him as an outsource contractor. AT & T has moved for summary judgment on this count.

 Before analyzing the merits of this issue, the court believes that some clarification of a point missed in the briefs is necessary. Geiger's claim for promissory estoppel is not recognizable under Pennsylvania law. The Pennsylvania Supreme Court has held that "equitable estoppel is not an exception to the employment at-will doctrine." *Paul v. Lankenau Hospital*, 524 Pa.

90, 569 A.2d 346, 348 (1990). In other words, reliance on an employer's promise does not create a contract-type right to employment. *Id.* The Pennsylvania Supreme Court recently reaffirmed *Paul* in *Stumpp v. Stroudsburg Municipal Authority*, in which the court relied on *Paul* in holding that detrimental reliance on a promise by a government employer "is simply not relevant" in determining whether an employee had a property interest in his employment. 540 Pa. 391, 658 A.2d 333, 336 (1995). The court has also rejected attempts to carve out an exception to *Paul* by distinguishing promissory estoppel from equitable estoppel. *See, Delaware Valley Medical Center v. Niehaus*, 538 Pa. 481, 649 A.2d 433, 434 (1994), *rev'g*, 429 Pa.Super. 119, 631 A.2d 1314 (1993).

 The court believes that the promissory estoppel count of Geiger's complaint is more appropriately read as a claim that Geiger's employment relationship with AT & T was no longer at-will, and that AT & T breached its contractual obligation to Geiger. As a general rule in Pennsylvania, employees are considered to be at-will, and may be terminated at any time. *Stumpp*, 658 A.2d at 335. To rebut the presumption of at-will employment, Geiger must establish the existence of:

(1) sufficient additional consideration; (2) an agreement for a definite duration; (3) an agreement specifying that the employee will be discharged only for just cause; or (4) an applicable recognized public policy exception.

*Robertson v. Atlantic Richfield Petroleum Products Co.*, 371 Pa.Super. 49, 537 A.2d 814, 819 (1987), *appeal denied*, 520 Pa. 590, 551 A.2d 216 (1988). Geiger asserts that his acceptance of an early retirement from AT & T in 1986 constituted sufficient additional consideration to change his employment relationship from at-will to one in which he could be terminated only for cause.[13]

---

12. Because Devon would not pay him during retraining, Geiger chose to apply for unemployment compensation and to pay for retraining courses on his own. Geiger Dep. at 91–92; Geiger–Devon Certif., at ¶¶ 7–8.

13. Geiger also asserts that he defeats the at-will presumption based on the "applicable public policy consideration" that discharges based on age discrimination violate public policy. However, any common law action for wrongful discharge or breach of contract based on discriminatory discharge is preempted by the PHRA, which pro-

Whether sufficient additional consideration is present is a question of fact and contract interpretation, and is generally for the jury. However, the court may answer questions of fact and contract interpretation when the "evidence is so clear that no reasonable man would determine the issue before the court in any way but one[.]" *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 312 (1986) (citation omitted). In this case, no reasonable jury could find that Geiger furnished sufficient additional consideration to AT & T to overcome the at-will presumption of employment. "Additional consideration is narrowly defined." *Duvall v. Polymer Corp.*, Civ.A. No. 93–3801, 1995 WL 581910, at *16 (E.D.Pa. Oct. 2, 1995) (citation omitted).

> [A] court will find "additional consideration" when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform.

*Darlington*, 504 A.2d at 315. Geiger does not contend that he provided AT & T a substantial benefit in addition to his regular services, but he does contend that his acceptance of early retirement and relinquishment of secure employment were substantial hardships which a jury could find to be additional consideration.

This court disagrees. When Geiger retired from AT & T in 1986, he was an at-will employee. Based on the evidence before this court, a reasonable jury could not find that Geiger's retirement from at-will employment at AT & T based on the promise of being hired as an outsource contractor could constitute a substantial hardship capable of changing Geiger's employment status from at-will to one of termination-only-for-cause. Such a change would mean that Geiger had more rights to his employment as an outsource contractor after he retired (and began to receive pension benefits) than he had as a full-time employee.

There is a possibility, not argued by Geiger, that the substantial hardship he endured was the loss of the benefits he received from full-time employment, such as overtime wages and having AT & T withhold the appropriate taxes from his paycheck. However, the courts have given a narrow reading to "additional consideration," generally requiring a showing of some "extraordinary detriment or ... extraordinary benefit" before allowing the question to reach the jury. *Darlington*, 504 A.2d at 315; *see Duvall*, 1995 WL 581910, at *17 (foregone offers of employment from other companies not substantial hardship); *Cashdollar v. Mercy Hospital*, 406 Pa.Super. 606, 595 A.2d 70, 73–74 (1991) (upholding verdict of substantial hardship when "special circumstances" of plaintiff selling his house, uprooting his pregnant wife and child to move to new state for new job, from which he was fired after sixteen days); *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571, 580 (1986), *appeal denied*, 532 Pa. 665, 616 A.2d 986 (1992) (no substantial hardship when the detriments are "commensurate with those incurred by all manner of salaried professionals"). Any detriment Geiger incurred by retiring from AT & T was insufficient to create a jury question of whether additional consideration existed, particularly when balanced against the fact that he began receiving his pension benefits immediately upon retirement.

Furthermore, if sufficient additional consideration were present in this case, it would entitle Geiger to protection from being discharged without cause only for a reasonable time. *Veno*, 515 A.2d at 580. The length of that "reasonable time" would be "commensurate with the hardship the employee has endured or the benefit he has bestowed." *Id.* In this case, AT & T retained Geiger as an outsource contractor from October 1, 1986 (the day after he retired from AT & T) through March 31, 1993 (the day his assignment at AT & T was terminated). This six and a half year period is a reasonable length of time in light of the

---

vides a statutory cause of action for discriminatory discharge. *See, e.g., Jacques v. Akzo Int'l Salt Inc.*, 422 Pa.Super. 419, 619 A.2d 748, 753 (1993) (common law action for wrongful dis-

charge because of age discrimination preempted by the PHRA, even in cases where plaintiff is unsuccessful on the statutory claim).

fact that Geiger endured no substantial hardship in accepting the early retirement package. Therefore, the court will grant summary judgment for AT & T on the promissory estoppel/breach of contract count of the complaint.

## V. CONCLUSION

Geiger has not presented evidence sufficient to sustain his claims of age discrimination against AT & T and Devon or his claim of promissory estoppel against AT & T. Accordingly, judgment is entered for Defendants on all counts. An appropriate order follows.

### *ORDER*

AND NOW, this 17th day of April, 1997, upon consideration of Defendant AT & T Corporation's Motion for Judgment on the Pleadings, Defendant Devon Consulting Company's Motion for Summary Judgment, and all responses and supplemental briefs filed in conjunction with these motions, it is hereby ORDERED as follows:

1. Defendant AT & T Corporation's Motion for Judgment on the Pleadings, converted by this court on December 16, 1996 to a Motion for Summary Judgment, is GRANTED.

2. Defendant Devon Consulting Company's Motion for Summary Judgment is GRANTED.

3. Judgment is entered in favor of Defendants AT & T Corporation and Devon Consulting Company on all counts, and the Clerk of Court is directed to close the docket for statistical purposes.