**Raymond J. WALSH,**

v.

**ALARM SECURITY GROUP, INC., Robert Gaucher and Donald M. Young.**

**No. CIV.A. 01–287.**

United States District Court, E.D. Pennsylvania.

Oct. 22, 2002.

Robert W. Small, Berlinger & Small, Abington, PA, for Raymond J. Walsh.

Erin M. O'Neill, Reed Smith, LLP, Philadelphia, PA, for Alarm Sec. Group, Inc.

Jeffrey P. Lewis, McKissock & Hoffman, P.C., West Chester, PA, for R. Gaucher, D. Young.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This case is now before the Court for disposition of the defendants' motions for summary judgment as to all of Plaintiff's claims against them. For the reasons which follow, the motions shall be granted in part and denied in part.

### Statement of Facts

On or about October 27, 1999, Raymond Walsh accepted an offer of employment from Donald Young, the Vice President of Operations for Alarm Security Group, Inc. ("ASG") to become the general manager of an office which ASG intended to open in Philadelphia. At the time that Mr. Walsh accepted this offer, he was employed as a general branch manager for Security Link in San Bruno, California. In the offer letter which Plaintiff signed, it was "as-

sumed" that his start date would be "approximately January, 1, 2000," and his earnings were "guaranteed to be $100,000 payable in bi-weekly increments." The day after he received this written offer letter, Plaintiff tendered his resignation to Security Link and subsequently left this position on November 4, 1999. Later that same month, Plaintiff relocated from California to Philadelphia.[1]

In the first week of January, 2000, Plaintiff telephoned Defendant Young to present himself for work. At that time and over the course of the next several months, however, Plaintiff was told that his start date would be delayed. Eventually, in July, 2000, Plaintiff was informed that ASG would not be opening a Philadelphia office and hence he did not have a job. Mr. Walsh thereafter instituted this lawsuit alleging breach of contract, fraud, negligent employment, promissory estoppel and violations of the Pennsylvania Wage Payment and Collection Act, 43 P.S. § 260.1, et. seq.

While they do not dispute that they offered and Mr. Walsh accepted the position of general manager of the Philadelphia office, Defendants contend that at all times their employment offer was contingent upon ASG acquiring enough companies with existing business to open a branch in the Philadelphia area. Insofar as that never occurred, Defendants assert that a necessary condition precedent was never satisfied and thus they are not liable to Mr. Walsh.

### Standards Governing Motions for Summary Judgment

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and ex-

pense. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Under Fed.R.Civ.P. 56(c), summary judgment is properly rendered:

> "... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Stated more succinctly, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Oritani Savings & Loan Association v. Fidelity & Deposit Company of Maryland,* 989 F.2d 635, 638 (3rd Cir.1993); *Troy Chemical Corp. v. Teamsters Union Local No. 408,* 37 F.3d 123, 125–126 (3rd Cir.1994); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 700 F.Supp. 838, 840 (W.D.Pa.1988). An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

---

**1.** Plaintiff, his wife and two youngest children moved to the San Francisco, California area in 1997 when Plaintiff took the Security Link job. Prior to that time, Plaintiff had always resided in the Philadelphia area and in Wyndmoor, Pennsylvania since 1967.

*Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In *Celotex Corp. v. Catrett, supra,* the Supreme Court held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact, but that this did not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The Court also held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). This does not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose its own witnesses. Rather, Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the required showing that a genuine issue of material fact exists. *Id. See Also, Morgan v. Havir Manufacturing Co.,* 887 F.Supp. 759 (E.D.Pa.1994); *McGrath v. City of Philadelphia,* 864 F.Supp. 466, 472–473 (E.D.Pa. 1994).

### Discussion

#### 1. Plaintiff's claims for breach of contract

■ Pennsylvania courts have recognized the doctrine of employment at-will for almost a hundred years. *Carlson v. Arnot–Ogden Memorial Hospital,* 918 F.2d 411, 414 (3d Cir.1990). Indeed, Pennsylvania law holds that as a general rule, "employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason." *Pipkin v. Pennsylvania State Police,* 548 Pa. 1, 693 A.2d 190 (1997). *See Also: Shick v. Shirey,* 552 Pa. 590, 595, 716 A.2d 1231, 1233 (1998) and *Geary v. U.S. Steel Corporation,* 456 Pa. 171, 175, 319 A.2d 174, 176 (1974) ("[a]bsent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason."). For the presumption of at-will employment to be overcome, a party must establish either an express contract between the parties, or an implied-in-fact contract plus additional consideration passing from employee to employer, or an applicable recognized public policy exception. *Kelly v. Retirement Pension Plan,* 209 F.Supp.2d 462, 480 (E.D.Pa.2002); *Rapagnani v. Judas Co.,* 736 A.2d 666, 669 (Pa.Super.1999); *Raines v. Haverford College,* 849 F.Supp. 1009, 1012 (E.D.Pa.1994).

■ It is noteworthy that absent a specification of definite duration, a contract of employment is presumed to be terminable at will by either party; a plaintiff may overcome this presumption by showing that the intent of the parties is that the contract last for some definite period of time. *Karr v. Lower Merion Township,* 582 F.Supp. 410, 413 (E.D.Pa. 1983). In order to overcome the presumption of at-will employment, a contract must be clear and definite; if the language is ambiguous or there is no definite contractual agreement, agreements will be strictly reviewed. *Nix v. Temple University,* 408 Pa.Super. 369, 375–376, 596 A.2d 1132, 1135 (1991); *Veno v. Meredith,* 357 Pa.Super. 85, 96, 515 A.2d 571, 577 (1986). An employment handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be

bound legally by its representations in the handbook. *Caucci v. Prison Health Services,* 153 F.Supp.2d 605, 611 (E.D.Pa. 2001); *Bauer v. Pottsville Area Emergency Medical Services,* 758 A.2d 1265, 1269 (Pa.Super.2000). The handbook must contain a clear indication that the employer intended to overcome the at-will presumption. *Caucci,* at 611, citing *Luteran v. Loral Fairchild Corp.,* 455 Pa.Super. 364, 688 A.2d 211, 214–15 (Pa.Super.1997). The court may not presume that the employer intended to be bound legally by distributing the handbook nor that the employee believed that the handbook was a legally binding instrument. *Id.* Generally, explicit disclaimers of contract formation in an employee handbook preclude a breach of contract claim. *Id.,* citing *Landmesser v. United Air Lines, Inc.,* 102 F.Supp.2d 273, 280 (E.D.Pa.2000). In the usual case, the court must allow the jury to consider an employee's alleged additional consideration, as well as all the circumstances surrounding the parties' agreement, in order to determine whether the presumption of at-will employment has been rebutted. *Rapagnani,* 736 A.2d at 671; *Geiger v. AT & T Corp.,* 962 F.Supp. 637, 649 (E.D.Pa.1997). However, the court may answer questions of fact and contract interpretation "when the evidence is so clear that no reasonable man would determine the issue before the court in any way but one." *Geiger,* at 649, quoting *Darlington v. General Electric,* 350 Pa.Super. 183, 504 A.2d 306, 312 (1986).

In the case at hand, it is Plaintiff's contention that he had both an express and an implied employment contract with ASG which required that he resign his employment with Security Link and relocate from California to Philadelphia by January 1, 2000. Plaintiff relies upon the letter of October 20, 1999 from Donald Young which confirmed their telephone conversation in which Young offered and Plaintiff accepted the position of General Manager of the Philadelphia branch of the Alarm Security Group and which summarized the offer and the compensation plan. In addition to summarizing the base salary, bonus structure, health benefits, vacation and relocation allowance, the letter further provided:

> "During the first twelve months as General Manager of the Philadelphia branch your earnings are guaranteed to be $100,000 in bi-weekly increments. If your earnings under the branch bonus plan exceed that amount you will be paid the higher amount. You and I will discuss a start date that is mutually satisfactory. It is assumed that the date will be approximately January 1, 2000 …"

Mr. Walsh argues that because his income was guaranteed for the first twelve months that a jury could find that he had an employment contract for at least one year. Plaintiff alternatively submits that he had an employment contract for at least five years given that the defendants told him they intended to build the company and then sell it after 5–7 years with a significant payout for everyone, including him. In view of the state of Pennsylvania law, we cannot agree with either argument.

For one, it is well-settled that oral representations as to the predicted length of time of employment do not modify the at-will presumption under Pennsylvania law. *Permenter v. Crown, Cork and Seal Co., Inc.,* 38 F.Supp.2d 372, 378 (E.D.Pa.1999), citing, *inter alia, Marsh v. Boyle,* 366 Pa.Super. 1, 530 A.2d 491, 494 (1987) (stating that "the employer's assurances that Appellant would be working as a publisher 'for at least two years' was not sufficiently definite to take the agreement out of the at-will employment presumption"); *Engstrom v. John Nuveen & Co., Inc.,* 668 F.Supp. 953, 959 (E.D.Pa.1987) ("The contractual provision necessary to overcome the at-will presumption must be for a spe-

cific and definite term, not vague or conclusory"); *Braun v. Kelsey–Hayes Co.*, 635 F.Supp. 75, 77 (E.D.Pa.1986). We therefore cannot find that Mr. Walsh had a five-year employment contract.

■ Similarly, there is nothing in Mr. Young's confirmation letter which guaranteed Mr. Walsh employment for a definite period. Rather, reading the letter in its entirety, we find that it guarantees that *if* Mr. Walsh were to become employed by ASG, then he would be paid at the rate of $100,000 per annum on a bi-weekly basis (or more if his earnings under the branch bonus plan were to exceed that amount) for the first year and that he would thereafter be paid a base salary of $50,000, plus a revenue bonus, operating income bonus and long term growth bonus. In as much as ASG never opened the Philadelphia branch office and Plaintiff never actually *worked* for ASG, we cannot find that he is entitled to $100,000 under an express contract.

■ However, we find that the questions as to whether Mr. Walsh provided additional consideration to ASG and whether ASG knew that he would suffer great hardship and loss by its failure to employ him must be left to a jury. Indeed, as noted in *Permenter*, "[o]ne type of consideration often discussed is the relocation of an employee, particularly when accompanied by relocation of a family," and that "[o]ther relevant factors include abandonment of other job opportunities and the sale of a home." *Permenter*, 38 F.Supp.2d at 379, citing *Shaffer v. BNP/Cooper Neff, Inc.*, Civ. A. No. 98–71, 1998 WL 575135, *4 (E.D.Pa. Sept.4, 1998), *Marsh v. Boyle*, 530 A.2d at 494, *Darlington v. General Electric*, 504 A.2d at 312, and *Martin v. Safeguard Scientifics*, 17 F.Supp.2d 357,

369 (E.D.Pa.1998). Given that there is evidence on this record that Mr. Walsh gave up a year-end bonus worth approximately $20,000, moved his wife and his two youngest children back to Philadelphia from California and was forced to cash out certain Security Link stock options at a time which was less than advantageous, we find that a jury could conceivably find this to be sufficient additional consideration to support an implied-in-fact employment contract. We must therefore deny ASG's motion for summary judgment on Plaintiff's breach of contract claims.[2]

**2. Plaintiff's claim for fraud**

■ Under Pennsylvania law, fraud consists of anything calculated to deceive, whether by single act or combination, by suppression of truth, or by suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth or look or gesture. *Kerrigan v. Villei*, 22 F.Supp.2d 419, 428 (E.D.Pa.1998), citing, *inter alia*, *Pittsburgh Live, Inc. v. Servov*, 419 Pa.Super. 423, 615 A.2d 438, 441 (1992) and *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1251 (Pa.Super.1983). To establish a claim for fraudulent misrepresentation under Pennsylvania law, a plaintiff must prove by clear and convincing evidence that at the time the representation was made, it was: (1) a material representation of fact; (2) which was false; (3) that the maker was aware of its falsity or reckless as to whether it was true or false; (4) that the statement was made with the intent of misleading another into relying on it; (5) there existed a justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Pacitti v.*

**2.** Given that there is absolutely no evidence whatsoever on this record that the individual defendants Donald Young and Robert Gaucher acted in their individual capacities at any time relevant to the plaintiff's causes of action here, we shall grant summary judgment in their favor with respect to the claims against them individually.

*Macy's,* 193 F.3d 766 (3d Cir.1999); *Fisher v. Aetna Life Insurance & Annuity Co.,* 39 F.Supp.2d 508 (M.D.Pa.1998). *See Also: Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994) and *Delahanty,* 464 A.2d at 1252. To be actionable, a misrepresentation need not be in the form of a positive assertion; the misrepresentation may be a concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment. *Kerrigan,* at 429, citing *Boyle v. Odell,* 413 Pa.Super. 562, 605 A.2d 1260, 1264 (1992).

■ Here, while close, we nevertheless find that there is sufficient evidence from the deposition testimony of Defendants Young and Gaucher that the defendants may have misrepresented that they had already acquired a sufficient number of existing businesses to open the Philadelphia branch office in order to ensure that they would have a branch manager if and when they should need one in the Philadelphia marketplace. Accordingly, we shall deny the summary judgment motion as to the plaintiff's claim for fraud.

### 3. Plaintiff's claim for negligent employment

■ In Count IV of his complaint, Plaintiff seeks damages under a theory of negligence, contending that in making the representations and in offering him employment the defendants, acting jointly and severally, were negligent. As noted by the Third Circuit Court of Appeals in *Carlson,* "[r]ecovery in negligence is not available unless the defendant owes a duty of care to the plaintiff ... (citations omitted) We have found no indication that Pennsylvania imposes a duty of care on employers toward prospective employees before the formation of an employment contract, and we decline to create such a duty." *Carlson,* 918 F.2d at 417. Given that we have not been able to find any

authority that suggests that there has been any change in the law since *Carlson* was decided in 1990, we shall grant summary judgment with respect to Mr. Walsh's claim for "negligent employment."

### 4. Plaintiff's claim for promissory estoppel

■ In Count VI, Plaintiff asserts a claim for promissory estoppel against Defendant ASG only. Equitable estoppel, however, is not a separate cause of action; it may be raised either as an affirmative defense or as grounds to prevent the defendant from raising a particular defense. *Carlson,* 918 F.2d at 416. Moreover, Pennsylvania law simply does not recognize promissory or equitable estoppel as an exception to the at-will employment doctrine. *Id.; Permenter,* 38 F.Supp.2d at 379; *Geiger,* 962 F.Supp. at 648, all citing *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346, 348 (1990). Accordingly, summary judgment is entered in favor of the defendant and against the plaintiff on Count VI of the complaint.

### 5. Plaintiff's claim under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et. seq.*

Finally, Mr. Walsh seeks to collect wages from ASG under the authority of the Wage Payment and Collection Law, 43 P.S. § 260.1, *et. seq.* ("WPCL").

■ It is generally recognized that the WPCL does not create a new, statutory right to compensation, but merely establishes a right to enforce the payment of wages and compensation that the employer has legally obligated itself to pay. *Scully v. US WATS, Inc.,* 238 F.3d 497, 516–517 (3d Cir.2001); *Gautney v. Amerigas Propane, Inc.,* 107 F.Supp.2d 634, 646 (E.D.Pa.2000). Whether specific wages are due is determined by the terms of the

contract; bonuses owed under an employment contract are "wages" within the meaning of the Act. *Gautney*, 107 F.Supp.2d at 646, citing *Doe v. Kohn, Nast & Graf, P.C.*, 862 F.Supp. 1310, 1325 (E.D.Pa.1994) and 43 P.S. § 260.2a. To be recoverable under the WPCL, the wages must have already been "earned." *See: Hirsch v. Bennett*, Civ. A. No. 90–1076, 1991 WL 75200, 1991 U.S. Dist. LEXIS 5993 (E.D.Pa. May 1, 1991); *Allende v. Winter Fruit Distributors, Inc.*, 709 F.Supp. 597, 599 (E.D.Pa.1989).

■ Here, while it would appear that Plaintiff clearly had not "earned" any wages from ASG, this finding must arguably be left to the jury to consider in conjunction with its evaluation of the issue of whether plaintiff supplied sufficient additional consideration to warrant a finding of an implied employment contract. Thus, in deference to the ultimate finder of fact, we must decline to enter summary judgment in favor of ASG on Count V of the complaint.

For all of the foregoing reasons, the defendants' motions shall be granted in part and denied in part pursuant to the attached order.

## ORDER

AND NOW, this day of October, 2002, upon consideration of the Motions of Defendants Alarm Security Group Monitoring, Inc., Robert Gaucher and Donald M. Young for Summary Judgment and Plaintiff's response thereto, it is hereby ORDERED that the Motion on behalf of Defendants Gaucher and Young in their individual capacities is GRANTED, that the Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART and Judgment as a matter of law is entered in favor of the

Defendants on Counts IV and VI of the Plaintiff's Complaint.